**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| PHIL READ, individually and on behalf of others similarly situated, | § § § | Case Number. 1:26-cv-00001-ADA-SH |
| *Plaintiff* | § § § | |
| vs. | § § § | |
| KITS EYECARE, LTD D/B/A OPTICONTACTS, | § § § | |
| *Defendant* | § § | |

**DEFENDANT KITS EYECARE, LTD D/B/A OPTICONTACTS'**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF**
**CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, KITS EYECARE, LTD D/B/A OPTICONTACTS (hereinafter, ***"Kits"***) files this Motion to Dismiss the claims asserted against Kits by Plaintiff Phil Read ("Plaintiff") for failure to state a claim upon which relief can be granted. In support of its Motion, Kits states as follows:

## I.    INTRODUCTION

Plaintiff's Complaint should be dismissed in its entirety because all of Plaintiff's claims are based upon the alleged receipt of unwanted *text messages*, which are not actionable under any of the four counts at issue here. In Counts I, II, and III, Plaintiff (on behalf of himself and a purported class) seeks relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5), citing various Federal Communications Commission ("FCC") implementing rules as grounds for each. In Count I, Plaintiff contends the text messages received violated the TCPA because his phone number is on the National Do Not Call Registry, as set forth under 47 C.F.R. § 64.1200(c)(2). Count II alleges the texts received did not comply with the Caller ID

transmission requirements of 47 C.F.R. § 64.1601(e)(1).  In Count III Plaintiff contends it was a TCPA violation for Kits to send text messages to Plaintiff after he requested that they stop, as is required by 47 C.F.R. § 64.1200(d).

Numerous courts have properly determined that text messages are not actionable under the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5), and this Court should find the same. The plain language of 47 U.S.C. § 227(c)(5) provides for a private right of action for a person who has received more than one "telephone call" in violation of the statute.  The statute does not apply to the receipt of text messages (or email, or facsimiles, or any other types of written communications).  This was the legislative intent given there have been no amendments to the statutory language of § 227(c)(5) despite other neighboring provision amendments.  While true that the Federal Communications Commission ("FCC") and some courts have interpreted the term "telephone call" under § 227(c)(5) to include text messages, many other courts have reached the opposite conclusion by interpreting the statute by its plain language and clear meaning.

The United States Supreme Court made clear in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402, (2024) and *McLaughlin Chiropractic Associates v. McKesson Corp.*, 606 U.S. 146, 145 S. Ct. 2006, 2015 222 L. Ed. 2d 405 (2025) that courts must decide legal questions by applying their own judgment rather than deferring to various administrative agencies, and must determine the meaning of a law under ordinary principles of statutory interpretation.  The Supreme Court also acknowledged in *Loper Bright* that the statutory meaning **is fixed at the time of enactment**.  Text messaging is a technology that was not even in existence when the TCPA was codified in 1991.  Accordingly, the Court should interpret 47 U.S.C. § 227(c)(5)'s application to "more than one telephone call" to mean it is applicable to telephone calls, and not to text messages

as Plaintiff alleges here.  In so doing, the Court should align with those district courts nationwide that have dismissed TCPA claims under Fed. R. Civ. P. 12(b)(6) for this reason.

Count II additionally fails because there is no private right of action to enforce the Truth in Caller ID Act or its implementing caller-ID rules under 47 C.F.R. § 64.1601(e).

Finally, in Count IV, Plaintiff alleges the same texts constitute violations of the Texas Business and Commerce Code § 302.101 (the Texas Mini-TCPA).  That claim fares no better because the alleged texts all preceded the September 1, 2025 amendment to the statute which, for the first time, expanded the definition of "telephone solicitation" to specifically include text messages.  Prior to September 1, 2025, text messages were not actionable.  Plaintiff does not (and cannot) allege that the receipt of text messages from Kits occurred on or after the enactment of the amendment on September 1, 2025.  As a result, Plaintiff's claim under Tex. Bus. & Com. Code § 302.101 fails as a matter of law.

## II.    FACTUAL BACKGROUND

The Complaint alleges that Plaintiff's cellular number is residential, noncommercial, used for personal and household purposes, and has been listed on the National Do Not Call Registry for more than one year before receiving text messages from Kits. *See* ECF No. 1 (the "Compl.") ¶¶ 23-27.

Plaintiff further alleges that he did not expressly consent to receive at least sixty-eight (68) promotional text messages from Kits beginning September 9, 2024, that the messages advertised contact lenses, discounts, promotional codes, and free merchandise, and that at least thirty text messages were received after he texted the word "REVOKE" on or about February 27, 2025. *Id*. ¶¶ 21, 28-33. Plaintiff provides the following screen shots showing texts received on "Mon. Sep 9," "Mon. Sep 16," "Fri. Feb 28," "Tue, Mar 4," and "Tue Mar 11":



*Id.* ¶ 30.

Both September 9, 2024 and September 16, 2024 fell on Mondays, so it is safe to conclude

that the two texts in the left screen shot were allegedly received in the year 2024 (September 9,

2025 and September 16, 2025 both fell on Tuesdays).   As for the middle and right screen shots,

February 28, 2025 fell on a Friday, March 4, 2025 fell on a Tuesday, and March 11, 2025 fell on

a Tuesday.   Accordingly, it is safe to conclude that those texts were allegedly received on those

dates in the year 2025 and not in 2026 (February 28, 2026 fell on a Saturday; March 4, 2026 and

March 11, 2026 both fell on a Wednesday).

Plaintiff seeks to represent four proposed classes of similarly situated individuals: a

National DNC Class, a Telemarketing Caller ID Class, an Internal Do Not Call Class, and a Texas

Business and Commerce Code Class.  *Id.*   ¶ 47.

### III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court disregards legal conclusions couched as factual allegations and considers only well-pleaded factual content to determine whether it allows the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. However, a plaintiff must do more than recite the formulaic elements of a cause of action. *See Twombly* at 556–57. Additionally, the Court is not bound to accept as true a legal conclusion couched as a factual allegation in the complaint. *See Iqbal*, 556 U.S. at 678.

The Fifth Circuit applies this standard by accepting well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and asking whether the facts '"raise a right to relief above the speculative level. . . ."' *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*). "Accordingly, a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 734 (5th Cir. 2019). Dismissal is proper when a complaint fails to allege facts that, if true, "nudge" the claims across the line from conceivable to plausible on its face. *Twombly*, 550 U.S. at 547; *Iqbal*, 556 U.S. at 678–80. !

## IV.   ARGUMENT

### A.   This Court is Empowered to Interpret the Scope of the TCPA.

Dismissal is appropriate here because Plaintiff's attempt to impose liability for the alleged receipt of text messages pursuant to 47 U.S.C. § 227(c)(5) is not a cognizable legal theory. The United States Supreme Court has made clear that a district court has an obligation to analyze and construe statutory language, and must decide legal questions by applying its own judgment rather than deferring to various administrative agencies. *See Loper Bright*, 603 U.S. 369, 402, (2024). Courts alone are therefore empowered to decide all relevant questions of law.

The plain language of § 227(c)(5) is as follows:

"(5)    Private right of action.

A person who has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State— . . . .

47 U.S.C. § 227(c)(5) (emphasis added).  The statute's clear and plain language does not encompass "text messages."  Rather, § 227(c)(5) explicitly refers to a 'telephone call,' a term not defined in the statute itself, and remains silent as to any application to text messages.  As numerous courts have found, text messaging was not an available technology in 1991, and thus the term "telephone call" could not have been contemplated to include text messages or SMS messages under 47 U.S.C. § 227(c)(5) at the time of enactment.

As a result, Plaintiff's claims asserted herein pursuant to 47 U.S.C. § 227(c)(5) and predicated on the alleged receipt of unwanted text messages, should be dismissed pursuant to Fed. R. Civ.P. 12(b)(6) because the plain language of the statute does not provide a private right of action for text messages.

B.    **This Court is Not bound by Federal Agency Interpretations of Ambiguous Statutes.**

In 2024, the United States Supreme Court in *Loper Bright*, 603 U.S. 369 returned the obligation of statutory interpretation to the judicial branch in finding that courts are not required to defer to an administrative agency's interpretation(s) of the statute(s) they administer.  In doing so, the Court took head-on the 1984 decision of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

In analyzing this issue, the United States Supreme Court overruled *Chevron* and held that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 603 U.S. at 412.  The Court was

emphatic that "courts need not and under the APA **may not** defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. at 413 (emphasis added).

Building upon its 2024 *Loper Bright* decision, in June 2025, the United States Supreme Court in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*., 606 U.S. 146 (2025) held that district courts are not bound by the FCC's interpretation of the TCPA. Citing to the 2024 decision of *Loper Bright,* the United States Supreme Court explained:

> Fundamental principles of administrative law establish the proper default rule:  In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct.  **District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation**.

*Id.* at 402 (emphasis added).  In *McLaughlin,* the Court further explained that:

> That is the proper default rule for a variety of reasons.  To begin, this Court has long recognized a 'basic presumption of judicial review' of agency action.  *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 586 U.S. 9, 22, 139 S. Ct. 361, 202 L. Ed. 2d 269 (2018) (*quoting Abbot Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)).  As a general matter, 'unless there is persuasive reason to believe' that Congress intended to preclude judicial review, this Court will not preclude judicial review.

*Id.* at 155-156.  In concluding its analysis, the Court held that a district court is not bound by the FCC's interpretation of the TCPA, finding:

> The District Court is not bound by the FCC's interpretation of the TCPA.  **The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation**, affording appropriate respect to the agency's interpretation.

*Id.* at 168 (emphasis added).

The FCC's prior guidance was "[w]e affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number" and "[t]his encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003).

However, as one court correctly observed, that interpretation of the FCC relates to 47 U.S.C. § 227(b) and not § 227(c):

> As for the Plaintiffs' reliance upon the FCC's 2003 Order to bring 'text message' within the purview of Section 227(c)(5), within the relied upon Paragraph 165, the FCC explicitly mentions 'automatic telephone dialing system', 'artificial or prerecorded message', and 'automated or prerecorded telephone calls'. 18 FCC Rcd. 14014, 14116 para. 165. In footnotes appearing within Paragraph 165, only 47 U.S.C. § 227(b) of the TCPA is cited along with 47 C.F.R. § 64.1200(a). Section 227(b), *not* 227(c), addresses restrictions on the use of 'an automatic telephone dialing system or an artificial or prerecorded message', and, as already discussed, 47 C.F.R. § 64.1200(a) is the implementing regulation for Section 227(b), not Section 227(c). As the Defendant argues, the 2003 Order was only addressing text messages sent using an automatic telephone dialing system or an artificial or prerecorded message, and, thus, the 2003 Order does not even address the specific provisions of the TCPA and its regulations at issue in this case.

*Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 900 (C.D. Ill. 2025).

Accordingly, the FCC has not expressly interpreted that the term "telephone call" under 47 U.S.C. § 227(c) includes text messages. Even if it did, this Court is not bound by the FCC's interpretation of the TCPA, and in the wake of *Loper Bright* and *McLaughlin* it must make its own independent interpretation of the statute. In doing so, the Court should conclude that the plain language and legislative intent of the TCPA supports a finding that text messages are not telephone calls under 47 U.S.C. § 227(c)(5).

**C.** **The Court Should Find Text Messages Are Not Actionable Under 47 U.S.C. § 227(c) Of The TCPA.**

Following the decisions in *Loper Bright* and *McLaughlin*, many courts across the country have found text messages are not actionable under 47 U.S.C. § 227(c) of the TCPA.

**i.** **Under A Plain Reading of 47 U.S.C. § 227(c), "Telephone Call" Does Not Mean "Text Message."**

The United States District Court for the Central District of Illinois recently found that, based on the plain language of the statutory text, 47 U.S.C. § 227(c) does not encompass text messages. The Illinois court conducted the analysis in line with recent Supreme Court guidance to interpret the statute based on the statute's clear and plain language. In the July 21, 2025 decision of *Jones*, 792 F. Supp. 3d 894,[1] the court granted a defendant's Rule 12(b)(6) motion to dismiss and found that 47 U.S.C. § 227(c) does not apply to text messages, reasoning that the phrases "text message" and "SMS message" are wholly absent from the plain language of the statute.  In line with *Loper Bright* and *McLaughlin,* the court explained that "[u]nder the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning." *Id.* at 899 (*citing U.S. v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020)). The *Jones* court further explained that:

> Section 227(c)(5) simultaneously explicitly refers to a 'telephone call', a term not defined in the statute itself, and remains silent as to its application to text messages.  Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.

---

[1] This matter is currently on appeal before the Seventh Circuit Court of Appeals. *See Jones v. Blackstone Med. Servs., LLC*, No. 25-2398.

*Jones*, 792 F. Supp. 3d at 899.  After reviewing the express textual content of § 227 (c)(5), court held: "(t)hus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Id*.

Similarly, in *Irvin v. Sonic Industries Services., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *4 (N.D. Ga. Apr. 20, 2026) the federal court dismissed Plaintiff's attempt to pursue a putative class action under 47 U.S.C. §227(c)(5) of the TCPA – wherein text messages formed the basis of the claim.  The *Irvin* court refuted Plaintiff's argument that text messages are calls under the "ordinary, contemporary, common meaning" of the word "telephone call" and held that "[t]his argument runs afoul of the Supreme Court's instruction in <u>Loper Bright</u> that **a statute's meaning is 'fixed at the time of enactment.'"** *Irvin*, 2026 WL 1098403, at *3 (quoting *Loper Bright,* 603 U.S. at 400) (emphasis added).

Like the court in *Jones*, the *Irvin* court reasoned that "because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase 'telephone call' would not have included text messages." *Id.* at 3 (citing *Jones*, 792 F. Supp. 3d at 899).  *See also Davis v. CVS Pharmacy, Inc*., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (granting defendant's motion to dismiss and finding that "the statutory text here *is* clear, and a text message is not a 'telephone call.'") (emphasis in original); *Sayed v. Naturopathica Holistic Health, Inc*., No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting defendant's motion to dismiss on the grounds that the statutory language does not include "text messages.").  Based on the sound reasoning of these courts and others, the *Irvin* court properly dismissed the Complaint finding that "text messages" are not actionable under 47 U.S.C. § 227(c)(5).

Numerous other courts have applied the same reasoning in granting motions to dismiss TCPA claims on similar grounds.  *See, e.g. Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-

**Page 10 of 21**

TWP-MKK, 2026 WL 847568, (S.D. Ind. Mar. 26, 2026) ("[t]he 'ordinary' principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer.  It is not for a court to legislate by reading into the TCPA something that is not there."); *accord Sw. Airlines Co. v. City of San Antonio, Texas*, 797 F. Supp. 3d 709, 724 (W.D. Tex. 2025) ("[A]s with any question of statutory interpretation, 'words are given their ordinary, plain meanings, and language must be enforced unless ambiguous.'") (quoting *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023)).  Particularly instructive is the reasoning in *Davis*, 797 F. Supp. 3d 1270 (dismissing Plaintiff's TCPA Complaint pursuant to Fed. R. Civ. P. 12(b)(6)):

> No normal person refers to a text message, or thinks of a text message, as a 'call.'  No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner.
>
> . . .
>
> Certainly, no ordinary person would think of a text message as a '*telephone call*.'  This conclusion – **supported by the ordinary public meaning at the time of the provision's enactment** – is enough to end this case.

*Davis*, 797 F. Supp. at 1273 (emphasis added); *see also Stockdale v. Skymount Prop. Grp.*, LLC, No. 1:25 CV 1282, 2026 WL 591842, at *3–4 (N.D. Ohio Mar. 3, 2026) (dismissing a putative class action TCPA claim pursuant to Fed. R. Civ. P. 12(b)(6) holding "[u]nder these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance . . . [w]here, as here, the language of the statute is clear, the Court's analysis stops.").

Moreover, Congress could not have intended for the TCPA to encompass technology that had yet to be invented. While some courts have erroneously relied upon "conventional wisdom" to expand the statute and have found that text messages are "calls" encompassed by the TCPA,

these decisions improperly subvert the legislative intent and the role of Congress to draft legislation and are not in line with proper statutory interpretation. *See NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) ("'We follow the 'plain and unambiguous meaning of the statutory language,' interpreting undefined terms according to their ordinary and natural meaning and the overall policies and objectives of the statute.'") (internal quotation marks and citations omitted). Here, there is no need for any further deliberation as to the scope of what constitutes a "telephone call" – the plain language is clear and unambiguous.  Had Congress intended differently, it would have amended the statute accordingly.

      **ii.**        **"Telephone Calls" and "Text Messages" Serve Different Functions.**

Plaintiff may urge that the term "telephone call" encompasses text messages because they ostensibly serve the same function – to facilitate communication.  But this is no better than arguing that "telephone call" also encompasses a letter, or billboard, or email, or television commercial, or any other method by which communication is facilitated. Not only would doing so be a disproportionate extension of the definition of a "telephone call," but it also would be antithetical to the principle that a statute is to be interpreted by its plain language.  *See Richards v. Shein Distribution Corp.,* No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (granting defendant's motion to dismiss and finding that "'telephone calls' . .  and text messages are different in several important ways'" … "[m]ost notably, telephone calls involve the use of sounds and a voice …. [a]nd a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line"); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *3 (granting defendant's motion to dismiss and stating "[t]his Court finds that text messages do not present the same type of nuisance that phone calls do and concludes that a text message is not merely a '"new application"' of § 227(c)(5)"); *Stockdale v. Skymount Property Group, LLC,* 2026

WL 591842  (granting dismissal and finding that "[u]nder [the 1991 definition] 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance")[2]; *Sayed*, 2025 WL 2997759 (granting dismissal and reasoning that in common American English, "telephone call" and "text message" are distinct forms of communication while noting that Congress's use of separate terms "telephone call" and "text message" elsewhere in the TCPA and related amendments demonstrates Congress understood the distinction); *James v. Smarter Contact, Inc.,* No. 8:25-CV-1657-KKM-SPF, 2026 WL 879244, at *3 (M.D. Fla. Mar. 31, 2026) (granting dismissal and finding that "[t]he ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message.")

In *Jones*, 792 F. Supp. 3d 894, the court opined that any contrary interpretation by the FCC (if even applicable to § 227(c)(5)) could not yield to the legal principles outlined in *Loper Bright* because:

> It is not for a court to legislate by reading something into the TCPA that is not there[]:
>
> 'The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch.  And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute.'

*Id.* at *901 (quoting *Loper Bright*, 603 U.S. at 403) (footnote omitted).

This Court should decline to entertain an invitation to expand upon the plain language of the statute and should find that the statutory text of "telephone call" under 47 U.S.C. § 227(c)(5) does **not** encompass text messages.

---

[2] The court also acknowledged that its decision arguably contrasts with FCC interpretations but stated that following *Chevron's* reversal, "it is for Congress—not this Court—to fill those gaps."

### iii.   To Include Text Messages As Actionable Under 47 U.S.C. § 227(c)(5) Is Contrary to the Legislative Intent.

The fact that Congress amended a neighboring provision – 47 U.S.C. § 227(e)(8)(C) – to include the term "text messages" but did not similarly amend 47 U.S.C. § 227(c)(5) should be viewed as another indication of Congress' intent. Congress also did not amend 47 U.S.C. § 227 to encompass "text messages" when it last amended the TCPA through the passage of the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence (TRACED) Act in December 2019.  With no similar amendment to 47 U.S.C. § 227(c)(5), the proper way to interpret the statute is to "first begin with the text of the statute itself." *Salutoceuticals, LLC v. United States Small Bus. Admin.*, 750 F. Supp. 3d 764, 773 (W.D. Tex. 2024) (*quoting United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019)).

Instructive on this point is *Radvansky v. Kendo Holdings, Inc.,* No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026).  In that case, the court dismissed a putative class action claim based upon 47 U.S.C. § 227(c)(5), pursuant to 12(b)(6) and recognized that Congress' recent amendment of the TCPA to a neighboring provision,  47 U.S.C. § 227(e)(8)(C), **did not** include an amendment to U.S.C. §227(c)(5).  The *Radvansky* court reasoned:

> It is true that Section 227(c)(1) uses the term 'telephone solicitations,' which is defined to include "messages," but Section 227(c)(5)—the specific provision under which Plaintiff pursues a private right of action here—refers solely to "telephone calls." See 47 U.S.C. § 227(a)(4), (c)(1); cf. 47 U.S.C. § 227(c)(5). Thus, Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.' Davis, 797 F. Supp. 3d at 1274.
> . . .
> Thus, 'when Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.' *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 958 (11th Cir. 2025)).

*Radvansky*, 2026 WL 810929 at *2-3.

Because Congress chose not to amend the language of 47 U.S.C. § 227(c)(5) to include "text message," it is proper to conclude that the legislative intent was to adhere to language of 47 U.S.C. § 227(c)(5), which **does not encompass text messages.** The Court should therefore follow the guidance of those courts that have conducted a thoughtful analysis of the statutory text, recognized that text messages did not exist at the time the statute was drafted, and uphold the clear distinctions between the roles of the judiciary and the legislature, by finding that the plain language of the TCPA *does not* encompass text messages and that *any* remedy must be addressed by the legislature.

**D.    The Court Should Decline to Follow the Flawed Reasoning in Decisions Finding Text Messages Are Actionable under § 227(c)(5).**

Some courts, such as the Northern District of California in *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025), have held that text messages constitute "calls" under TCPA § 227(c), reasoning that the plain meaning of "telephone call" encompasses both oral and written communications, and the TCPA's definition of "telephone solicitation" as "the initiation of a telephone call or message" shows Congress was concerned with the purpose rather than the form of communications. *Id*. at *3. The flawed reasoning in *Wilson* and others that have followed this thinking, have improperly expanded upon the plain language of the 47 U.S.C. § 227(c) and have read into the statute something that is not there.

The decisions post *Loper Bright*, finding that text messages are actionable under §227(c)(5) of the TCPA also erroneously focus on "modern parlance" to conclude that the text messages are equivalent to calls, simply because they are transmitted through a common device (a cell phone).

For example, in *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at

*4 (S.D. Tex. Jan. 26, 2026), the defendant argued that the term "telephone call" was specific and that at the time of the statute's inception "telephone" was a device that transmitted sound electronically – thus a plain reading of the statute should disqualify text messages. The *Alvarez* court acknowledged it was a "closer call" but found that "there is nothing in the meaning of 'telephone' that *excludes* the function of a text message." *Id*. at *4 (emphasis added).  The *Alvarez* court erred by straining arguments advanced in *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987) to give an *additional meaning* to the term "telephone call" by including text messages. Unlike, *In re Erickson*, which addressed whether modern farming machinery advancements in horse-drawn "mowers" and "hay loaders" significantly distinguished the old technology from the new, "telephone calls" and "text messages" are two separate functions, accomplishing two separate things. There is a distinct difference between a telephone call, which facilitates an audio connection and oral conversation between the parties, and a text message which is a written message communicating information. Respectfully, the court in *Alvarez* erred by failing to limit its analysis to the plain language of the statute and by unilaterally expanding the definition of a "telephone call" to one that encompasses "text messages" – an entirely different technology.

The *Alvarez* court recognized, however, that the pertinent question before it was whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" **in 1991**. The court was correct in acknowledging that "[i]n today's regular parlance, of course, no ordinary person would use the word 'telephone call' to refer to a text message," but thereafter, the court's analysis falls apart after it determined that the term "'call'" – defined by Webster's Dictionary as "'to get or try to get into communication by telephone'" – also encompassed written text messages. *Alvarez*, 2026 WL 202930, at *4.  In doing so, the court did not give proper weight to the fact that the term "call" is modified by the word "telephone" which meant, at the time the statute was

enacted, "'an instrument for producing sounds at a distance; *specif:* one in which sound is converted into electrical impulses for transmission by wire.'" *Id.*; *see James*, 2026 WL 879244, at *4 (observing that courts that have found that the term "telephone call" to encompass text messages fail to give meaning to every word in the statute and therefore "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991.")

The *Alvarez* court's analysis strained the definition of "telephone call" well beyond a reasonable interpretation of the term at the time the statute was enacted. Importantly, in 1991 there were other instruments for facilitating written communication through text such as telegrams, facsimiles, and email, yet no reasonable interpretation would find that the term "telephone call" under 47 U.S.C. § 227(c)(5) also encompasses those forms of communication. It is no less unreasonable to expand the scope of the TCPA to include "text messages" – a technology that did not even exist in 1991.

Furthermore, the lack of any substantive analysis of this issue in the Western District of Texas, means that this Court can, and should, utilize this opportunity to act within the scope of its judiciary duties and interpret the plain language of §227(c)(5). As the Southern District of Texas in *Alvarez* acknowledged:

> The Court is aware of only one other court in this Circuit that has considered the scope of the § 227(c)(5) cause of action post-*McLaughlin*, and none that have analyzed the language directly. *See Duron v. Kings Capital Holding LLC*, No. 3:25-cv-00149-DCG, 2026 LX 68851 (W.D. Tex. Jan. 13, 2026) (report and recommendation **relying on precedent**); *see also, Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-00538-RP, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025) (analyzing the regulation at 47 C.F.R. § 64.1200(d), **rather than the statute**).

*Alvarez*, 2026 WL 202930, at *3 (emphasis added). Indeed, there has been very little analysis of this issue from the Western District of Texas. For example, while the Court in *Duron* granted a

motion for default judgment in favor of the *pro se* Plaintiff and found text messages to be actionable under 47 U.S.C. § 227(c)(5), it did not conduct a post-*McLaughlin* analysis of the plain language of the statute (nor was there any briefing submitted on the issue). Rather, the Court in *Duron* relied upon what it deemed was "the weight of authority" finding texts actionable under 47 U.S.C. § 227(c). However, only two out of the eight cases representing that weight of authority were decided post-*McLaughlin* (which was decided in June 2025), and even then, one of those two cases deferred to the FCC interpretation with no post-*McLaughlin* analysis of the statutory language (*see Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025)).

Accordingly, a fulsome post-*McLaughlin* analysis of whether a text message is actionable under 47 U.S.C. § 227(c) remains unaddressed by the Western District of Texas and is ripe for a more thoughtful and well-reasoned examination. In doing so, the Court should conclude that the plain language and legislative intent of the TCPA supports a finding that text messages are not telephone calls under 47 U.S.C. § 227(c), and are therefore not actionable under the TCPA.

**E.  Count II Should Be Dismissed on Additional Grounds Because There Is No Private Right of Action Under  47 C.F.R. § 64.1601(e).**

As to Count II (Telemarketing Caller ID), there is no private right of action to enforce the Truth in Caller ID Act or its implementing caller-ID rules under 47 C.F.R. § 64.1601(e), which does not contain an express private right of action. *See, e.g. Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024).

**F.  Plaintiff's Claim Under Tex. Bus. & Com. Code § 302.101 Must be Dismissed.**

The Tex. Bus. & Com. Code § 302.101 was not expanded to cover text messages until the passage of Texas Senate Bill 140 (SB 140), on September 1, 2025. *See* Tex. Bus. & Com. Code

Ann. § 302.001(7) (West) ("Amended by Acts 2025, 89th Leg., ch. 964 (S.B. 140), § 1, eff. Sept. 1, 2025.").[3] Prior to SB 140, the definition of "telephone solicitation" in TX BUS & COM § 302.001(7) referred to a "telephone call" initiated by a seller or salesperson to induce a purchase and did not include text messages. *See Powers*, 2022 WL 2992881, at *4 ("The alleged violations are about text messages, not phone calls. Under a plain reading of the Code, Chapter 302 does not apply to text messages.").

Effective September 1, 2025, SB 140 amended the definition of "telephone solicitation" in § 302.001(7) to read: a "call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item." TX BUS & COM §  302.001(7).

As set forth in the Factual Background section above (*see supra* § II), Plaintiff attaches screen shots to his Complaint showing he received text messages that were all prior to September 1, 2025.  Plaintiff's claims regarding the receipt of text messages prior to September 1, 2025, should therefore be dismissed, as they were not actionable under Tex. Bus. & Com. Code § 302.101.  Furthermore, Plaintiff's vague allegation that the text messages were received "from September 9, 2024, to present" (*see* Compl. ¶ 28) is insufficient to move the needle from "conceivable" to "plausible" as is required under *Twombly*.  Leave to amend should also be denied, because Plaintiff has not, and cannot, allege that he received text messages on or after September 1, 2025 from Kits, and Kits' records reflect no text messages were sent to Plaintiff on or after September 1, 2025.

---

[3] Noteworthy is the fact that, unlike Congress, the Texas legislature recognized that an amendment was necessary to encompass text messages under the statute. To find that the TCPA requires no such amendment would be inconsistent with the determinations of the Texas legislature.

**CONCLUSION**

For all of the reasons set forth above, Kits respectfully requests that the Court dismiss all of the claims against Kits with prejudice under Fed. R. Civ. P. 12(b)(6) and grant such other relief as may be just and appropriate.

Dated: June 15, 2026

Respectfully submitted,

HOLLAND & KNIGHT, LLP

*Michael Stockham*_____
Michael Stockham, Esq.
Holland & Knight LLP
One Arts Plaza,
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: +1.214.969.2515
michael.stockham@hklaw.com

*Counsel for Defendant Kits Eyecare, Ltd*
*d/b/a Opticontacts*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

<u>*/s/ Michael Stockham*</u>

Michael Stockham