**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| PHIL READ, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br>v.<br><br>KITS EYECARE, LTD D/B/A OPTICONTACTS,<br><br>           Defendant. | CASE NO. 1:26-CV-00001-ADA-SH |

**DEFENDANT KITS EYECARE, LTD D/B/A OPTICONTACTS'**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

### I.  INTRODUCTION

Plaintiff's Opposition asks this Court to expand § 227(c)(5) beyond the private right of action Congress enacted.  Its authorities either address § 227(b), Article III standing, default judgment, or agency guidance—*not* the text of § 227(c)(5)'s private right of action after *McLaughlin*.  The Opposition's string citations, selective dictionary definitions, strained analogies, and FCC guidance cannot overcome the statutory text.  As *Loper Bright Enterprises v.  Raimondo*, 603 U.S.  369 (2024), and *McLaughlin Chiropractic Associates, Inc.  v.  McKesson Corp.*, 606 U.S.  146 (2025), make clear, this Court must exercise independent judgment in interpreting the statute.  The answer is clear: a "telephone call" is not a "text message."

Notably, Plaintiff has voluntarily withdrawn Count IV under Tex.  Bus.  & Com. Code § 302.101, conceding that the Texas statute did not cover text messages before its September 1, 2025, amendment.  If the Texas legislature recognized an amendment was necessary to encompass text messages, it is inconsistent to contend the TCPA encompasses text messages without any similar amendment.

1

## II.  ARGUMENT

### A.  Plaintiff's Dictionary-Based Arguments Fail.

In its Motion, Kits demonstrated that § 227(c)(5) unambiguously limits the private right of action to "telephone calls" — a term that does not reference text messages, SMS messages, or any written communication.  (Mot. at 2, 5–6, 9–11.) Plaintiff responds that 1991 dictionaries defined "call" broadly as "to communicate or try to communicate with by telephone," encompassing text messages.  (Opp. at 8.)  Plaintiff further asserts that "telephone call" and "call" are synonymous and that the definition was not limited to oral communications. (*Id*. at 8–12.)

Plaintiff's argument requires this Court to read "telephone call" as though Congress wrote "any communication by telephone" — which it did not.  As *Davis v.  CVS Pharmacy, Inc.*, 797 F. Supp.  3d 1270, 1273 (N.D.  Fla.  2025), observed: "No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue.'" *Id.*  Even *Alvarez v.  Fiesta Nissan, Inc.*, 2026 WL 202930, at *4 (S.D.  Tex.  Jan.  26, 2026) acknowledged that "[i]n today's regular parlance, of course, no ordinary person would use the word 'telephone call' to refer to a text message." *Id*.

Critically, "call" is modified by "telephone," which in 1991 meant "an instrument for producing sounds at a distance; specifically: one in which sound is converted into electrical impulses for transmission by wire."  (Mot. at 16–17.) A text message does not produce sound.  As *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *4 (M.D.  Fla.  Mar.  31, 2026), observed, courts finding "telephone call" encompasses text messages "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991." *Id.*

Plaintiff's assertion that "telephone call" and "call" are synonymous (*see* Opp. 11-12) is incorrect.  The modifier "telephone" narrows the meaning to a call made using an instrument for transmitting sound — not <u>any</u> communication transmitted via a device that happens to be called a "telephone."    Plaintiff's contention elides the fundamental distinction between voice communication and written messaging — two different forms of communication serving different purposes.

**B.  The "New Applications" Doctrine Does Not Rescue Plaintiff's Claims.**

Kits established in its Motion that Congress could not have intended the TCPA to encompass technology not yet invented, and that "telephone calls" and "text messages" are two separate functions.  (Mot. at 10–13, 16–17.) Plaintiff responds with the analogy that a law banning "vehicles" from a park applies to Cybertrucks, and cites *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987), analogizing text messages to hydraulic haybines replacing horse-drawn mowers. (Opp. at 1, 14–18.)

Plaintiff's Cybertruck analogy proves Defendant's point: a Cybertruck is still a "vehicle." The question here is whether an entirely <u>different form of communication</u> — a written text message — falls within "telephone call."  It does not, any more than an email or fax would.  The *Erickson* analogy likewise fails because the haybine still cuts hay — the same core function through improved technology.  A text message does not perform the same function as a telephone call; a call facilitates an audio connection while a text is a written communication.  As *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026), found: "'telephone calls' and text messages are different in several important ways. . . . Most notably, telephone calls involve the use of sounds and a voice.  And a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line."  *Id.*  The *Richards* court concluded that "a text

message is not merely a 'new application' of § 227(c)(5)," and the *Irvin* court dismissed a § 227(c)(5) text-message claim on the same ground. *See Richards*, 2026 WL 847568, at *3; *Irvin v. Sonic Industries Services, LLC*, 2026 WL 1098403, at *2-3 (N.D. Ga. Apr. 20, 2026).

Plaintiff also urges that defining "telephone" by its sound-transmission capability would exclude voice calls from modern smartphones because those devices also text, browse the internet, and perform other functions.  (Opp. at 15–16.)  This argument mischaracterizes Defendant's position.  Kits does not argue that the <u>device</u> must be limited to sound transmission; rather, the <u>act</u> described by "telephone call" — using a telephone to make a call — refers to using the device's sound-transmission function.  (Mot. at 12–13, 16–17.)  A smartphone making a voice call is still making a "telephone call;" a smartphone sending a text is performing an entirely different function. The statute regulates the act of calling, not the capabilities of the device.

## C.  Plaintiff's Reliance on the FCC's Interpretation Is Misplaced.

Kits established that following *Loper Bright* and *McLaughlin*, this Court is not bound by FCC interpretations <u>and</u> that the FCC's 2003 Order addressed <u>§ 227(b)</u>, not § 227(c). (Mot. at 2). Plaintiff responds that the FCC's interpretation deserves appropriate respect, that the 2003 interpretation is "especially helpful" to understanding the 1991 meaning, and cites *Campbell-Ewald Co. v. Gomez*, 577 U.S.  153, 156 (2016), for the proposition that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call.'" (Opp. at 2, 10–11.)

As *McLaughlin* held: "[t]he District Court is not bound by the FCC's interpretation of the TCPA.  The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation." 606 U.S.  at 168.  The FCC's 2003 Order addressed § 227(b) — the autodialer provisions — *not* § 227(c).  As *Jones v.  Blackstone Medical Services, LLC*, 792 F. Supp. 3d 894, 900 (C.D.  Ill.  2025), observed, "the 2003 Order was only addressing

4

text messages sent using an automatic telephone dialing system or an artificial or prerecorded message, and, thus, the 2003 Order does not even address the specific provisions of the TCPA and its regulations at issue in this case." *Id.*  *Campbell-Ewald* likewise addressed § 227(b), not § 227(c)(5), and the Supreme Court merely assumed without deciding that a text message fell within § 227(b)'s broader phrase "any call" because the issue was undisputed.  That text messages may be actionable under § 227(b) does not mean they are actionable under § 227(c)(5), which provides a separate private right of action limited to "telephone calls."

Plaintiff also invokes *Garcia Pinach v. Bondi*, 174 F.4th 117, 121 (2d Cir.  2025), for the proposition that *Loper Bright* permits challenges to new agency actions but not old ones already deemed legal under *Chevron*.  (Opp. at 19-20.)  This argument is inapposite.  Defendant is not seeking to overturn a prior adjudication that applied FCC guidance; rather, this Court is being asked in the first instance to interpret § 227(c)(5)—a question that has never been addressed by the Western District of Texas in a fully-briefed post-*McLaughlin* analysis.

**D.  The Statutory Structure Confirms Defendant's Position.**

Kits established that Congress's amendment of § 227(e)(8)(C) to include "text messages"—without similarly amending § 227(c)(5)—confirms legislative intent to exclude text messages from § 227(c)(5).  (Mot. at 14–15.) Plaintiff responds that § 227(a)(4)'s definition of "telephone solicitation" as "the initiation of a telephone call or message" supports reading "call" broadly, and that Congress's failure to amend § 227(c) represents acceptance of the FCC's interpretation because Congress operated under *Chevron* at the time. (Opp. at 13–14, 19.)

This argument undermines Plaintiff's position.  As *Radvansky v. Kendo Holdings, Inc.*, 2026 WL 810929, at *2-3 (N.D. Ga. Feb. 12, 2026), reasoned: "Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t

shows that Congress does not use the term "telephone call" to encompass all "messages" and "'when Congress uses different terms, we expect that they hold different meanings.'" (quoting *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 958 (11th Cir. 2025)). Congressional inaction does not constitute affirmative endorsement of an agency interpretation. As the *Jones* court observed: "'[t]he better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes.'" *Jones*, 792 F. Supp. 3d at 901 (quoting *Loper Bright*, 603 U.S. at 403).

Plaintiff further asserts that § 227(c) is structured as an express delegation of discretionary authority to the FCC to "fill up the details," and that any doubt should be resolved in the agency's favor. (Opp. at 1, 5.) But delegated authority to create DNC regulations is different from authority to expand the private right of action Congress created in § 227(c)(5). Plaintiff's reliance on *Rabbitt v. Rohrman Midwest Motors, Inc.*, 2026 WL 851279, at *2 (N.D. Ill. Mar. 27, 2026), highlights rather than avoids that distinction. (Opp. at 19.) *Rabbitt* framed the dispute as a tension between the FCC's broader authority to regulate "telephone solicitations" and Congress's narrower private-right language authorizing suit only by a person who received more than one "telephone call." *Rabbitt*, 2026 WL 851279, at *2. That framing is dispositive: the question is not whether the FCC may regulate text-message solicitations; it is whether Congress created a private cause of action for them in § 227(c)(5). Congress did not.

### E.  The Pager Analogy Does Not Help Plaintiff.

Plaintiff analogizes that since § 227(b) prohibits using autodialer technology "to make any call to any telephone number assigned to a paging service," and because pagers displayed written text, Congress itself used "call" in connection with written communications. (Opp. at 9, 16.) But a "call" to a pager was initiated by dialing the pager's telephone number — *making a telephone*

*call* that was then received by the paging device.  The sender used a telephone to *call* the pager. The fact that the pager displayed text on the receiving end does not transform the *act of calling* into something other than a telephone call.  The distinction here is between how a call is *initiated* (by dialing a number) and how it is *received*. § 227(c)(5) addresses the *sending* of a "telephone call," not the technology used to display it.  A text message, by contrast, is neither initiated nor transmitted as a telephone call — it is a separate and distinct written communication. (Mot. at 12–13, 17.)

### F.  The Purpose of the TCPA Does Not Expand Its Text.

Plaintiff urges that the TCPA's stated goal of protecting "residential telephone subscribers' privacy rights" supports reading § 227(c)(5) to cover text messages because texts invade privacy no less than voice calls and excluding texts would allow telemarketers to "bypass the Registry." (Opp. at 1–2, 14, 17–19.) But a policy concern cannot override the statute's plain text, and as the *Richards* court recognized, "text messages do not present the same type of nuisance that phone calls do." *Richards*, 2026 WL 847568, at *3.  More fundamentally, the remedy for any gap lies with Congress, not the courts.  As *Loper Bright* instructs: "Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, [but] they are of course always free to act by revising the statute." *Loper Bright*, 603 U.S. at 403.  Indeed, the Texas legislature did exactly that: it amended its statute to include text messages when it determined coverage was necessary.  *See* Tex. Bus. & Com. Code § 302.001(7).  In contrast, Congress has not.

### G.  The *Callier* Decision Actually Supports Dismissal.

Plaintiff cites *Callier v. American Auto Group LLC*, 2026 U.S. Dist. LEXIS 120642 (W.D. Tex. May 29, 2026), asserting that granting Defendant's Motion would reject a "growing

consensus" in this Circuit.  (Opp. at 3, 16–17.)  But *Callier* was a default judgment where the defendant never appeared or briefed the issue, and the Court lacked adversarial briefing on this dispositive question.

Furthermore, *Callier* did not conduct the adversarial post-*McLaughlin* analysis required here.  It was a default-judgment report and recommendation, and it stated only that it was "persuaded by the reasoning of the overwhelming majority of cases" confirming that text messages are actionable under § 227(c)(5). *Callier*, 2026 U.S. Dist. LEXIS 120642, at *18.  Respectfully, counting cases is no substitute for the "fulsome post-*McLaughlin* analysis" of § 227(c)(5)'s statutory text that Kits requested in its Motion. (Mot. at 17–18.)

More significantly, the *Callier* court itself held that text messages were *not* actionable under Texas Business and Commerce Code § 302.101, reasoning: "Based on a plain reading of the TBCC at the time of the conduct arising out of this claim, Chapters 301 and 302 do not apply to text messages." *Callier*, 2026 U.S. Dist. LEXIS 120642, at *18–20.  Because "telephone solicitation" was defined as "'a telephone call a seller or salesperson initiates,'" and because the plaintiff alleged only text messages, the court denied relief. *Id.* at *19–20.  If the Texas statute's "telephone call" did not include text messages—as *Callier* held—there is no principled basis for reading identical language in § 227(c)(5) differently.  Plaintiff's withdrawal of his own Texas claim confirms this point.

### H.  Plaintiff's Case-Count Argument Does Not Withstand Scrutiny.

Plaintiff asserts that courts in "more than thirteen districts" have found text messages actionable under § 227(c)(5). (Opp. at 6–8.) But a numerical tally does not determine statutory meaning, nor does statutory stare decisis transform § 227(b) cases into binding § 227(c)(5) holdings.  For example, both *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir.

2009) and *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), on which Plaintiff relies (Opp. at 8–12), addressed § 227(b), not the distinct private right of action in § 227(c)(5). *See Richards*, 2026 WL 847568, at *5 n.2 (finding *Satterfield* inapposite because it adjudicated § 227(b), used a non-contemporaneous dictionary, and relied on FCC deference no longer available after *Loper Bright*); *James*, 2026 WL 879244, at *3–4 (rejecting reliance on *Satterfield* and *Howard* because § 227(c)(5) uses "call" as a noun in "telephone call," while those decisions relied on the broader verb definition under § 227(b) and failed to give effect to the modifier "telephone" as understood in 1991); *see also Davis*, 797 F. Supp. 3d at 1273–74 (distinguishing § 227(b)(1)(A)(iii)'s "any call" from § 227(c)(5)'s "telephone call" and concluding that § 227(b) cases do not bind the § 227(c)(5) analysis).

Plaintiff's cited cases illustrate the problem. *Duron* was a default-judgment recommendation that relied on FCC guidance and the "weight of authority" rather than independently construing § 227(c)(5) after *McLaughlin*. *See Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 U.S. Dist. LEXIS 6340, at *11–13 (W.D. Tex. Jan. 13, 2026). *Watkins* analyzed whether 47 C.F.R. § 64.1200(d) applies to texts through § 64.1200(e), not whether "telephone call" in § 227(c)(5) reaches texts. *See Watkins v. EyeBuyDirect, Inc., No. 1:25-CV-538-RP,* 2025 U.S. Dist. LEXIS 167479, at *5–7 (W.D. Tex. Aug. 28, 2025). *Skopos* reasoned that the FCC had "expanded the TCPA to apply to text messages" and relied on § 227(b) authorities such as *Satterfield* and *Campbell-Ewald*. *See Wilson v. Skopos*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). And *Hudson* predated *McLaughlin*, treated the 2003 FCC Order as insulated by the Hobbs Act, and expressly noted the parties had not briefed *Loper Bright*. *See Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *11–15, *18–20 (M.D.N.C. Aug. 12, 2024). None of these authorities answers the question now before this Court:

whether Congress's private right of action for a person who received more than one "telephone call" authorizes claims based solely on text messages.

The better-reasoned post-*McLaughlin* authorities begin where this Court must begin: the words Congress chose in § 227(c)(5). Those decisions enforce the statute's limitation to "telephone call," distinguish the broader § 227(b) cases, and reject invitations to use FCC deference or policy concerns to enlarge a private right of action Congress did not create. *See Davis*, 797 F. Supp. 3d at 1273–74; *Radvansky*, 2026 WL 810929, at *2–3; *Stockdale*, 2026 WL 591842, at *3–4; *Richards*, 2026 WL 847568, at *3–5; *James*, 2026 WL 879244, at *3–4; *Irvin*, 2026 WL 1098403, at *2–4.

## I.  There Is No Private Right of Action Under 47 C.F.R.  § 64.1601(e).

Kits established that § 64.1601(e) contains no express private right of action. (Mot. at 18.) Plaintiff responds by citing *Dobronski v.  SelectQuote Insurance Services*, 773 F.  Supp.  3d 373 (E.D. Mich. 2025), and subsequent decisions.  But those non-binding decisions merely reflect a split over whether the caller-ID regulation was prescribed under § 227(c) or instead operates as a technical caller-ID rule outside § 227(c)(5)'s cause of action.  The better-reasoned decisions, including *Meyer v.  Capital Alliance Group*, 2017 WL 5138316, at *17 (S.D. Cal. Nov.  6, 2017), and *Griffin v.  American-Amicable Life Insurance Co. of Texas*, 2024 WL 4333373, at *5 (D.  Or. Sept.  27, 2024), correctly concluded no private right of action exists. (Mot. at 18.)  In any event, Count II still fails for the same threshold reason as Counts I and III: Plaintiff alleges text messages, but § 227(c)(5) authorizes private enforcement only for a person who received "more than one telephone call."  This Court should dismiss Count II on this independent ground as well.

Dated: July 8, 2026                           Respectfully submitted,

                                              HOLLAND & KNIGHT, LLP


                                                /s/ Michael Stockham
                                              Michael Stockham, Esq.
                                              HOLLAND & KNIGHT LLP
                                              One Arts Plaza 1722 Routh Street, Suite 1500
                                              Dallas, Texas 75201
                                              Phone: 214.969.2515
                                              Fax: 214.964.9501
                                              Michael.Stockham@hklaw.com

                                              Christopher R. Murphy (pro hac vice)
                                              HOLLAND & KNIGHT LLP
                                              150 N. Riverside Plaza, Suite 2700
                                              Chicago, Illinois 60606
                                              Tel: 312.715.5722
                                              Fax: 312.578.6666
                                              Email: Chris.Murphy@hklaw.com

                                              Jonathan Marmo (pro hac vice)
                                              HOLLAND & KNIGHT LLP
                                              1650 Market Street, Suite 3300
                                              Philadelphia, PA 19103
                                              Tel: 215.252.9568
                                              Fax: 215.867.6070
                                              Email: Jonathan.Marmo@hklaw.com

                                              *Counsel for Defendant Kits Eyecare, Ltd
                                              d/b/a Opticontacts*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the District

Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Michael Stockham
Michael Stockham