**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AT AUSTIN**

| | |
|---|---|
| **PHIL READ,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v*.<br><br>**KITS EYECARE, LTD D/B/A OPTICONTACTS.**<br><br>*Defendant*. | Case No. 1:26-cv-1-ADA-SH |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ADJOURN INITIAL CONFERENCE *SINE DIE* AND FOR PROTECTIVE ORDER TO STAY ALL DISCOVERY**

Plaintiff Phil Read ("Plaintiff") respectfully submits this Opposition to Defendant Kits Eyecare, Ltd. d/b/a OptiContacts' ("Defendant") Motion to Adjourn Initial Conference Sine Die and for Protective Order to Stay All Discovery (ECF No. 23) (the "Motion").

Defendant seeks the extraordinary relief of stopping all discovery in this action for an indefinite period merely because its Rule 12(b)(6) motion remains pending. But the filing of a motion to dismiss does not, standing alone, establish good cause under Federal Rule of Civil Procedure 26(c), and Defendant has not made the particularized showing necessary to justify shutting down discovery altogether.

Defendant identifies no pending discovery request that is unduly burdensome. It identifies no specific search that has been requested, no volume of documents that must presently be reviewed, no estimated cost, no declaration from a corporate representative or discovery vendor, and no concrete discovery obligation that creates an undue burden. Instead, Defendant speculates that because this is a putative class action, it may eventually have to conduct ESI

searches and review records concerning potential class members. That possibility does not establish good cause to stay all discovery, including ordinary Rule 26 disclosures and discovery concerning Plaintiff, Defendant's own communications with Plaintiff, Defendant's telemarketing practices, consent, do-not-call procedures, caller identification practices, and the systems Defendant used to send the messages alleged in the Complaint.

## I. Defendant has not Shown Good Cause to Stay Discovery

The presumption, under the Federal Rules, is that "discovery may proceed despite the filing of a Motion to Dismiss." *Endure Indus. Inc. v. Vizient, Inc.*, No. 3:20-CV-3190-E, 2021 WL 3771770, at *1 (N.D. Tex. Apr. 9, 2021) (Brown, J.) (citations omitted). As noted by other courts, a stay is "the exception rather than the rule," and, "[h]ad the Federal Rules contemplated that a motion to dismiss under [Rule] 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Yeti Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-CV-663 RP, 2016 WL 10571903, at *1 (W.D. Tex. Oct. 19, 2016); *see Griffin v. Am. Zurich Ins. Co.*, No. 3:14-CV-2470-P, 2015 WL 11019132, at *2 (N.D. Tex. Mar. 18, 2015); *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008).

Here, the Defendant has not established good cause to stay discovery. Rule 26(c) permits a protective order only upon a showing of good cause. Fed. R. Civ. P. 26(c). To show "good cause" under Rule 26, the party seeking a stay of discovery must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The Court has broad discretion in determining whether to grant a motion for a protective order or stay of discovery. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir.), *cert.*

*denied*, 498 U.S. 895 (1990). "While, in theory, a court may find good cause to stay discovery when there is a pending 12(b)(6) motion, in practice such stays are very rare, and almost never wise." *Yeti*, 2016 WL 10571903, at *1; *Von Drake v. Nat'l Broad. Co.*, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) ("While discovery may be stayed pending the outcome of a motion to dismiss, the issuance of stay is by no means automatic.") (cleaned up). So far, Defendant's claimed burden is entirely predictive. Plaintiff has not yet served any discovery. According to Defendant, determining which consumers fall within the proposed classes is "anticipated" to require costly searches, potentially including specially engineered ESI search terms or code and subsequent review. Mot. at 1. Defendant does not identify, however, any discovery request requiring it to undertake that work now. There is no affidavit estimating the number of custodians, the amount of data involved, the hours required, the expected cost, or any other concrete burden. Nor does Defendant explain why ordinary merits discovery concerning Plaintiff himself would require a class-wide database search. Defendant effectively asks the Court to infer undue burden from the words "class action." That is insufficient.

## II. Defendant's Motion to Dismiss Does not Justify Halting Discovery.

More importantly, Defendant's principal justification for suspending discovery is its prediction that its pending Rule 12(b)(6) motion will dispose of this action. But a litigant's confidence in its own dispositive motion is not good cause under Rule 26(c), and the mere possibility that a pending motion might narrow or eliminate claims does not justify bringing discovery to a halt. Indeed, multiple courts within the Fifth Circuit have already addressed the same or materially identical argument and concluded that text messages may support liability under § 227(c).

### a. Courts Within the Fifth Circuit Have Rejected Defendant's Argument.

In *Duron v. Kings Cap. Holding LLC,* No. 3:25-CV-00149-DCG, 2026 WL 319779, at *5 (W.D. Tex. Jan. 13, 2026), *report and recommendation adopted*, No. EP-25-CV-00149-DCG, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026), this Court concluded that interpreting § 227(c) to encompass text messages was consistent with the substantial body of authority applying the TCPA to text communications. That decision substantially weakens Defendant's claim that its interpretation is sufficiently clear to justify freezing discovery.

Likewise, in *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, at *7–17 (S.D. Tex. Jan. 2026), the Southern District of Texas undertook a detailed post-*Loper Bright* analysis of the text and structure of § 227(c)(5) and rejected the proposition that text messages necessarily fall outside the statute. The court recognized that the ordinary meaning of "call" at the time of enactment was broad—"to get or try to get into communication by telephone"—and concluded that a text message reasonably fits within that definition.

As explained more fully in Plaintiff's opposition, that reasoning directly answers Defendant's suggestion that because modern speakers distinguish between "calling" and "texting," Congress necessarily excluded written telephone communications in 1991. *Alvarez* explained that present-day linguistic conventions do not determine a statute's original meaning. Rather, the question is whether the original meaning of the statutory language is sufficiently broad to embrace later technological applications. *Alvarez* concluded that it was. And in *Callier v. Am. Auto Grp. LLC*, No. 3:25-CV-00231-LS-MAT, 2026 WL 1741206, at *8 (W.D. Tex. May 29, 2026), *report and recommendation adopted*, No. 3:25-CV-00231-LS, 2026 WL 1738124 (W.D. Tex. June 16, 2026), another court in this District stated that it was persuaded by "the overwhelming majority of cases" confirming that text messages are actionable under § 227(c)(5).

That approach is consistent with the Fifth Circuit's own recognition that general statutory terms can extend to technologies not specifically contemplated when Congress acted. As *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring), explained, statutory language is understood in its historical context with the recognition that general terms may embrace later technological developments. And the Supreme Court has likewise made clear that "[t]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998).

Those decisions matter significantly to the stay analysis. Defendant need not lose its motion to dismiss for this factor to weigh against a stay. The relevant point is that Defendant cannot plausibly characterize its motion as presenting a settled, plainly meritorious question when courts applying the law of this Circuit have repeatedly reached the opposite conclusion.

Indeed, the Fifth Circuit itself has described the TCPA as regulating both forms of unwanted communication, text message calls, just as equally as voice calls. In *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021), the court stated plainly: "Robocalls and robotexts are nuisances. Congress banned them in the [TCPA.]" Although *Cranor* did not resolve the precise § 227(c)(5) question presented by Defendant's motion here, its treatment of robocalls and robotexts as parallel harms under the TCPA further demonstrates why Defendant's contrary statutory position cannot be considered so obvious that ordinary discovery should stop.

Nor are *Duron* and *Callier* the only Western District authorities relevant to the issue. In *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025), the court recognized that a telephone solicitation may take the form of a call or text message in analyzing the TCPA's regulatory framework. Taken together, these

authorities demonstrate that Defendant asks this Court not merely to apply settled Fifth Circuit law, but to reject substantial persuasive authority from courts applying that law. A dispositive motion facing that degree of contrary authority does not justify shutting down discovery.

**b. The Statutory Text and Structure Provide a Substantial Basis for Plaintiff's Position.**

Plaintiff's position also rests on a substantial textual argument, not merely on a headcount of cases. Plaintiff relies primarily on his briefing in this regard. But, though Defendant emphasizes that § 227(c)(5) uses the phrase "telephone call," contemporaneous dictionaries defined "call" functionally as an attempt "to get or try to get into communication by telephone." *See*, e.g., *Webster's Ninth New Collegiate Dictionary* 197 (1990). That definition does not say "oral communication." It does not say "voice communication." It describes communication by telephone. The Ninth Circuit's analysis in *Howard v. Republican National Committee*, 164 F.4th 1119, 1123–24 (9th Cir. 2026), likewise recognized that the ordinary meaning of "call" in the TCPA is an attempt to communicate by telephone and treated text messaging as falling within that concept. Defendant may contend that those decisions arose under different provisions or do not dictate the result under § 227(c)(5). But that response only demonstrates the point relevant here: the statutory question requires interpretation and is subject to competing arguments. It does not demonstrate that Defendant's motion is so plainly correct that discovery should cease.

Plaintiff also relies on the familiar presumption that identical or materially identical statutory language carries a consistent meaning throughout the same enactment. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). Because "call" and "telephone call" have long been applied to text communications elsewhere in the TCPA, there is at minimum a substantial argument that Congress did not silently assign the same terminology a categorically different meaning in § 227(c)(5).

That argument is reinforced by § 227(c)'s structure. Section 227(c)(5) provides a cause of action where a person receives qualifying calls "in violation of the regulations prescribed under this subsection." The substantive subsection directs the FCC to protect residential telephone subscribers from unwanted "telephone solicitations," and the TCPA defines "telephone solicitation" to include the initiation of a telephone "call or message" for a commercial purpose. 47 U.S.C. §§ 227(a)(4), (c)(1)–(5). As *Alvarez* reasoned, those provisions must be read together rather than in isolation. See *United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018) ("text may never be taken out of context"); *King v. Burwell*, 576 U.S. 473, 492 (2015) (statutory language must be read in context and with a view to its place in the overall statutory scheme).

Plaintiff therefore has a substantial textual and structural basis for resisting dismissal independent of agency deference. That matters because Defendant repeatedly invokes *Loper Bright* as though overruling *Chevron* necessarily decides this case in Defendant's favor. It does not. *Loper Bright* requires courts to exercise independent judgment concerning statutory meaning; it does not prescribe Defendant's preferred interpretation. Numerous courts have exercised precisely that independent judgment after *Loper Bright* and nevertheless concluded that § 227(c) encompasses text communications.

**c. Defendant's Motion also Seeks Dismissal of an Independently Supported Caller ID Claim.**

There is an additional reason Defendant cannot establish that its motion is sufficiently strong to justify a blanket stay: its motion does not concern only the meaning of "telephone call" under § 227(c)(5). Plaintiff separately alleges violations arising from Defendant's failure to transmit caller identification information required by 47 C.F.R. § 64.1601(e). Defendant argues that those requirements are not privately enforceable. Plaintiff's dismissal opposition, however, identifies a developing and substantial body of recent authority reaching the opposite conclusion.

In *Dobronski v. SelectQuote Insurance Services*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025), the court conducted an extensive analysis of the regulatory and statutory basis for private enforcement of § 64.1601(e). That reasoning was adopted in *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025). Plaintiff also cited additional decisions recognizing private enforcement of the caller identification rules. Thus, even apart from the text-message issue, Defendant seeks dismissal of another TCPA theory on a question that has generated recent authority supporting Plaintiff. This undermines Defendant's contention that its dismissal motion is so overwhelmingly strong that continued discovery would likely prove pointless.

### III. An Indefinite Stay Would Prejudice Plaintiff and the Putative Class While Imposing no Demonstrated Burden on Defendant.

Delay also creates a concrete risk of evidentiary prejudice. Relevant records may be maintained by third-party vendors or communications platforms, and the passage of time increases the possibility that records will be deleted pursuant to ordinary retention practices, witnesses will become unavailable, or memories will fade. Courts have recognized these concerns when considering requests to stay discovery. *See Saleh v. Crunch, LLC*, 2018 WL 11264884, at *2 (S.D. Fla. 2018).

An indefinite stay would prejudice Plaintiff and the putative class by amplifying the risk that relevant evidence will be lost or destroyed. *See, e.g.*, *id.* ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases

have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al*., No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, No. 08-cv-02117-REB-KLM, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009).

Similarly, Defendant's burden argument remains conclusory. Defendant has not identified what particular discovery would require the allegedly burdensome search, what data would have to be collected, where that data is maintained, what effort would be required to retrieve it, or why narrower alternatives would be inadequate. Defendant instead asks the Court to accept a generalized prediction of future burden as justification for stopping discovery altogether. A federal court confronting a discovery stay in another TCPA action:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide

> class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> * * *
>
> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Adjourn Initial Conference *Sine Die* and for Protective Order to Stay All Discovery.

RESPECTFULLY SUBMITTED AND DATED this August 27, 2026.

*<u>/s/ Andrew Roman Perrong</u>*
Andrew Roman Perrong, Esq.
PA SBN # 333687
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: August 27, 2026.

*<u>/s/ Andrew Roman Perrong</u>*
Andrew Roman Perrong, Esq.