**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Phil Read,** *Plaintiff* | § | |
| **v.** | § | **No. 1:26-cv-00001-ADA-SH** |
| **Kits Eyecare, Ltd.,** *Defendant* | § | |

**ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE DISTRICT JUDGE**

Before the Court are Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 15, 2026 (Dkt. 11); Defendant's Notice of Supplemental Authority, filed July 20, 2026 (Dkt. 20); Defendant's Motion to Adjourn Initial Conference *Sine Die* and for Protective Order to Stay All Discovery, filed August 14, 2026 (Dkt. 23); and the associated response and reply briefs.[1]

## I. Background

Plaintiff Phil Read brings this putative class action against Defendant Kits Eyecare, Ltd. under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). Plaintiff's Complaint, Dkt. 1. Read alleges: After having registered his cell phone number on the National Do-Not-Call Registry, he received "at least sixty-eight telemarketing text message calls from Defendant [Kits Eyecare] between September 9, 2024, and the present." *Id.* ¶ 28. The unsolicited messages advertised Kits Eyecare's good and services, including promotional offers, discounts, and free

---

[1] The Honorable Alan D Albright (ret.) referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and Judge Alan D Albright's Standing Order on referrals to United States Magistrate Judges. Dkt. 3.

merchandise. *Id.* ¶¶ 31-32. Read requested via text message that the messages stop, but continued to receive similar messages from Kits Eyecare. *Id.* ¶ 34. He also was blocked from calling the telemarketing number, which provides incomplete caller identification, and make a "do not call request." *Id.* ¶ 38.

Read brings three counts under the TCPA, alleging that Kits Eyecare violated § 227(c) by initiating telephone solicitation to a residential telephone subscriber registered on the National Do-Not-Call Registry (Count One); making telemarketing calls without the transmission of caller identification information (Count Two); and sending telemarketing calls to registrants of the Do-Not-Call Registry after requests to stop (Count Three). *Id.* ¶¶ 54-71. Read brings a fourth claim under Texas Business and Commerce Code § 302.101 for telephone solicitation calls made without "holding a registration certificate for the business location from which the telephone solicitation is made." *Id.* ¶ 73.

Kits Eyecare now moves to dismiss Read's Complaint under Rule 12(b)(6). It argues that Read's claims fail because text messages are not actionable under § 227(c)(5) of the TCPA or the Texas Business and Commerce Code. It also argues that Count Two also fails because there is no private right of action to enforce caller identification regulations.

## II. Motion to Dismiss

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But "conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citation omitted). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**A. Text Messages under the TCPA**

Kits Eyecare argues that Read cannot bring his TCPA claims because § 227(c)(5) applies only to telephone calls, not text messages. Section 227(c)(5) creates a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated by the Federal Communications Commission ("FCC") under the subsection. 47 U.S.C. § 227(c)(5). The FCC, given rulemaking authority under the TCPA, has stated that § 227(c) prohibits both voice and text calls. *Callier v. Am. Auto Grp. LLC*, No. 3:25-CV-00231-LS-MAT, 2026 WL 1741206, at *7 (W.D. Tex. May 29, 2026), *R. & R. adopted*, 2026 WL 1738124 (W.D. Tex. June 16, 2026) (citing *In re Emanuel Hernandez*, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018)). Based on this guidance, courts have found claims involving text messages actionable under § 277(c)(5). *Id.* (collecting cases).

Under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court must apply ordinary tools of statutory construction and independently interpret the scope § 227(c)(5). Although the Fifth Circuit "has not yet addressed whether Subsection 227(c)(5) applies to text messages post-*Loper* and *McLaughlin*," *Callier v. Finish Line Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093, at *3 (N.D. Tex. Aug. 19, 2026), *R. & R. adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026), district courts in this Circuit have continue to find text messages actionable. *See, e.g.*, *id.*; *McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152, 2026 WL 413198, at *4-6 (M.D. La. Feb. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-343, 2026 WL 202930, at *3-6 (S.D. Tex. Jan. 26, 2026).

**1. Text of 47 U.S.C. § 227(c)**

When interpreting a statute, courts begin with the text itself. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). When words in a statute are undefined, courts should interpret them according "their ordinary, contemporary, common meaning" at the time of the statute's enactment. *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). "While every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Id.* There is an understanding that general terms may embrace later technological innovations. *Id.*

The TCPA does not define the term "telephone call." Because the TCPA "was drafted before the advent of text messaging," Congress would not have understood 'telephone call' to refer to modern textual communication. *Taylor v. OffersPDQ, LLC*, --- F. Supp. 3d ----, No. 4:23-CV-3018, 2026 WL 2998370, at *2 (S.D. Tex. Sept. 30, 2026). Accordingly, the Court considers "whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991." *Finish Line*, 2026 WL 2654093, at *4 (citation omitted). At the time of the TCPA's enactment, 'call' meant "to get or try to get into communication by telephone." *Alvarez*, 2026 WL 202930, at *4 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 197 (1990)). Under the plain meaning of the statute, text messages are one way "to get or try to get in communication by telephone." *Id.*

Kits Eyecare argues that the Court should follow the Seventh Circuit's more narrow definition of 'telephone call' as communication via sound, which excludes text messages. *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026). This Court has declined to follow *Steidinger*, finding the interpretation of courts within this Circuit that have consistently found § 227(c) applies to text messages to be persuasive. *Feliciano v. Red McCombs Hyundai Nw., L.L.C.*, 5:26-CV-200-JKP, 2026 WL 3232870, at *2 (W.D. Tex. Oct. 28, 2026). Because texts

messages are a later innovation used "to get or try to get into communication by telephone," the Court finds that text messages are embraced by "telephone call" under § 227(c).

**2. Statutory Context**

The statutory context of § 227(c) supports the inclusion of text messages. Statutes must "be read as a whole." *Territory of Guam v. United States*, 593 U.S. 310, 316 (2021) (citation omitted). Courts consider terms "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). In any given statute, "the same term usually has the same meaning." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024).

Section 227(b) of the TCPA also uses the term "telephone call." Under § 227(b), text messages qualify as 'calls.' *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 639 (S.D.N.Y. 2025) (collecting cases); *see also Taylor*, 2026 WL 2998370, at *3 (finding that §227(b) "prescribes a private cause of action for telemarketing text message recipients"). The inclusion of text messages under § 227(b) is persuasive of its inclusion under § 227(c), a subsection of the same statute that uses identical language, because finding 'telephone calls' to "encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies." *Finish Line*, 2026 WL 2654093, at *5 (citation omitted).

This interpretation also is consistent with the purpose of § 227(c): "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The statute defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). "This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (citation omitted).

Kits Eyecare argues that because Congress later added § 227(a)(4) to include text messages within "telephone solicitations" but did not amend § 227(c)(5), it instead intended that § 227(c)(5) have a different meaning. Dkt. 19 at 5. The Court finds that §227(c)(5) operates to enforce the entire subsection, and it is "equally plausible that by including 'telephone call or message' within the definition of 'telephone solicitation,' Congress intended to broaden 227(c)(5)'s cause of action to apply to all telephone solicitations covered by the subsection." *Finish Line*, 2026 WL 2654093, at *4. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Alvarez*, 2016 WL 202930, at *5 (citation omitted).

Kits Eyecare makes the same argument regarding the amendment to § 227(e)(8)(C), which added language distinguishing between voice and text communications. Dkt. 11 at 14. Because at the time of amendment Congress understood § 227(c)(5) as applying to text messages based on the FCC's interpretation and the TCPA's definition of "telephone solicitation," it had no need to amend the § 227(c)(5) to explicitly reference text messages. *Finish Line Inc.*, 2026 WL 2654093, at *5. For these reasons, the Court finds that the statutory context of the TCPA supports including text messages as actionable under § 227(c)(5).

**3. FCC Regulations**

Interpreting § 227(c) to include text messages also is consistent with FCC guidance. District courts are not bound by the FCC's interpretation but should afford it "appropriate respect." *McLaughlin*, 606 U.S. at 155. The FCC has stated that under § 227(c) it is "illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the [Do-Not-Call Registry]. This prohibition includes both voice calls and text messages." *In re Emanuel Hernandez*, 2018 WL 6830220 at *1. The FCC also amended its regulations regarding

both § 227(b) and (c) to apply to "any person or entity making telephone solicitations or telemarketing calls or text messages." 47 C.F.R. § 64.1200(e).

The Court finds that under ordinary principles of statutory interpretation, "telephone call" as used in § 227(c)(5) encompasses text messages and Read's TCPA claims are actionable.

**B. Private Right of Action to Enforce Caller Identification Claim**

Kits Eyecare also argues that Count Two fails because 47 C.F.R. § 64.1601(e) does not contain an express private right of action. Dkt. 11 at 18. Regulations cannot create private rights of action; they must be created by statute. *Stewart v. Bernstein*, 769 F.2d 1088, 1092 (5th Cir. 1985). Accordingly, Kits Eyecare's argument that § 64.1601(e) itself lacks an express cause of action is misplaced. The Court must analyze the statute, regulation, and regulation history to determine whether § 64.1601(e) was promulgated pursuant to § 227(c) of the TCPA, which creates a private right of action, or § 227(d), which does not. *Starling v. Homeover Gen. Contractors*, No. 4:25-CV-993-JDK, 2026 WL 1649101, at *4 (E.D. Tex. June 8, 2026).

Section 227(c) directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," including by comparing and evaluating "telephone network technologies." 47 U.S.C. § 227(c)(1). The FCC considers caller identification a 'network technology' that it was required to evaluate under § 227(c). *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 577 (E.D. Pa. 2025) (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd. 8752 (1992)). Section 64.1601(e) requires that any person or entity engaging in telemarketing transmit caller identification information and was promulgated simultaneously with the National Do-Not-Call database as part of a general package of "new rules to provide consumers with several options for avoiding unwanted telephone solicitations." *Starling*, 2026 WL 1649101, at *4 (citing 68 Fed. Reg. 44144-01).

The administrative history "unequivocally demonstrates that caller [identification] is a network technology, assessed by the FCC as one available method to protect residential telephone subscribers' privacy rights under § 277(c)." *Id.* (quoting *Newell*, 791 F. Supp. 3d at 578). Because 47 C.F.R. § 64.1601(e) was promulgated under § 227(c), the Court finds that Read's caller identification claim is actionable.

**C. State Law Claim**

Kits Eyecare also argues that Count Four fails because at the time Read received the alleged telemarketing messages, Texas Business and Commerce Code § 302.101 did not cover text messages. Dkt. 11 at 18-19. In response, Read states that he "does not oppose dismissal without prejudice of Count IV" and only seeks to pursue his TCPA claims. Dkt. 13 at 4 n.1. This Magistrate Judge recommends Count Four be dismissed without prejudice.

## III. Motion to Stay

"In a civil case, there is a strong presumption in favor of discovery, and the [movant] must overcome the presumption in its request for a stay." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 761 (W.D. Tex. 2008) (citation omitted). Discovery is not stayed "merely because defendant believes it will prevail on its motion to dismiss," but only on a showing of good cause. *Griffin v. Am. Zurich Ins. Co.*, No. 3:14-CV-2470-P, 2015 WL 11019132, at *2 (N.D. Tex. Mar. 18, 2015). Good cause exists "when the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay." *Fresenius*, 571 F. Supp. 2d at 767 (quoting FED. R. CIV. P. 26(c)(1)). The movant bears the burden to show that a stay is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted).

Kits Eyecare argues that discovery should be stayed pending a ruling on its motion to dismiss, which presents threshold legal questions that may dispose of the entire action without factual inquiry. It contends: "It would be unnecessarily costly and burdensome, as well as inconsistent with the purposes of a motion to dismiss, to require Kits to engage in discovery before a decision is rendered on the Motion." Dkt. 23 at 1. Because a pending motion to dismiss is alone insufficient to overcome the presumption in favor of discovery, the Court finds that Kits Eyecare has not shown good cause and **DENIES** its Motion to Adjourn Initial Conference *Sine Die* and for Protective Order to Stay All Discovery (Dkt. 23).

## IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the Honorable District Judge **GRANT in part and DENY in part** Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 11).

The court recommends that the District Court **GRANT** the motion and **DISMISS without prejudice** Count Four under Texas Business and Commerce Code § 302.101. This Magistrate Judge recommends that the District Court **DENY** the motion in all other respects.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 6, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE