**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

PHIL READ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KITS EYECARE, LTD D/B/A OPTICONTACTS,

Defendant.

Case No. 1:26-cv-00001-ADA-SH

---

**DEFENDANT KITS EYECARE, LTD D/B/A OPTICONTACTS' OBJECTIONS TO ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE [Dkt. No. 31]**

---

Pursuant to Fed. R. Civ. Proc. 72(b)(2) and 28 U.S.C. § 636, *defendant* Kits Eyecare, Ltd. d/b/a OptiContacts ("Kits") respectfully submits the following objections (the "Objections") to the Order and Report and Recommendation of the United States Magistrate Judge signed on November 6, 2026 (the "R&R") [Dkt. 31], which recommends that the Court deny Kits' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") [Dkt. 11] as to Counts I, II, and III of *plaintiff* Phil Read's ("Plaintiff") Class Action Complaint (the "Complaint") [Dkt. 1].

## I. <u>INTRODUCTION</u>

This putative class action arises from promotional text messages that Plaintiff alleges he received from Kits after his cellular number was listed on the National Do-Not-Call Registry. Plaintiff does not allege that Kits ever placed a single voice call to him. Every one of his three remaining claims nonetheless depends on the private right of action in 47 U.S.C. § 227(c)(5),

which Congress extended only to a person who has received "more than one telephone call" in violation of the regulations prescribed under that subsection. The dispositive question before the Court is therefore a narrow one of statutory interpretation: whether a written text message is a "telephone call" within the meaning of § 227(c)(5), as that phrase was understood when Congress enacted the Telephone Consumer Protection Act ("TCPA") in 1991.

The R&R answered that question in the affirmative, but it did so without engaging several of the arguments Kits fully briefed. The R&R defined only the word "call" and gave no effect to the word "telephone" that Congress chose to modify it. It acknowledged the Seventh Circuit's contrary decision in *Steidinger* but declined to follow it without any independent analysis. The R&R resolved the textual difference between § 227(c)(5)'s "telephone call" and § 227(a)(4)'s "telephone call or message" by finding Plaintiff's reading merely "equally plausible," and it inferred congressional approval of the Federal Communications Commission's ("FCC") position from congressional silence, which is precisely the type of reasoning *Loper Bright* and *McLaughlin* foreclose. It also relied on FCC guidance and on decisions construing the differently worded § 227(b) without explaining why either informs the scope of the narrower private remedy in § 227(c)(5).

The R&R also overstates the consensus on which it rests. In *Siringi v. Crust Pizza Co.*, the Southern District of Texas conducted the full post-*McLaughlin* analysis that Kits requested here and held that text messages are <u>*not*</u> actionable under § 227(c)(5). On *de novo* review, the district judge adopted that conclusion, found the difference between "telephone call" and "telephone solicitation" significant, and agreed with the Seventh Circuit that § 227(c)(5) affords a narrower private remedy than the regulatory protections Congress authorized for telephone solicitations. The Southern District of Florida reached the same result in *Phillips v. GJD Stars Inc.*, entering

judgment on the pleadings against a plaintiff who, like Plaintiff here, asserted a § 227(c)(5) claim based solely on text messages. And on November 16, 2026, the Northern District of Texas—the same District whose decision in *Callier v. Finish Line Inc.* the R&R quoted—held in *Starling v. What If Holdings LLC* that text messages are not "telephone calls" under § 227(c)(5) and dismissed a do-not-call claim based solely on text messages. All three courts sit in districts that had previously treated text messages as actionable "calls," and all three changed course once they set aside FCC guidance, and the prior case law based upon same, and conducted a detailed analysis of the statutory language of the TCPA. The R&R addresses neither *Siringi* nor *Phillips*, and *Starling* was decided after the R&R issued. Simply put, the purported consensus on which the R&R rests does not exist.

Kits therefore objects to the R&R's conclusion that "telephone call" in § 227(c)(5) encompasses text messages, and to each of the subsidiary findings on which that conclusion rests. Kits also objects to the R&R's conclusion that a private right of action exists to enforce the caller-identification rule. Because Counts I, II, and III each depend on § 227(c)(5), and because Plaintiff alleges only text messages, the Court should dismiss each of those causes of action with prejudice. Kits does not object to the R&R's recommendation that Count IV be dismissed. In the alternative, should the Court adopt the R&R, certification under 28 U.S.C. § 1292(b) is warranted, because the question presented is a controlling question of law on which courts of appeals and district courts are now divided.

## II. STANDARD OF REVIEW

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and it "may accept, reject, or modify," in whole or in part, the findings or recommendations made by the magistrate judge. 28

U.S.C. § 636(b); *see also* Fed. R. Civ. Proc. 72(b). A party filing objections "must specifically identify those findings" to which objections are being made. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

## III. OBJECTIONS

### A. OBJECTION 1 - THE R&R ERRED IN CONCLUDING THAT A TEXT MESSAGE IS A "TELEPHONE CALL" UNDER § 227(c)(5)

Kits objects to the R&R's conclusion that "'telephone call' as used in § 227(c)(5) encompasses text messages,"' and to each of the findings on which that conclusion rests, including that the ordinary meaning of "telephone call" embraces text messages, that the statutory context supports that reading, and that Congress's amendments to neighboring provisions reflect acceptance of it. (*See* Dkt. 31 at 4-7). The text, structure, and amendment history of the TCPA each point the other way.

#### 1. The Ordinary Meaning of "Telephone Call" in 1991 Did Not Include Text Messages

Courts "begin with the text," and '"[i]f the text…is clear and unambiguous, [the] inquiry ends."' *Vetter v. Resnik*, 163 F.4th 951, 956 (5th Cir. 2026) (internal citation omitted). Undefined terms are given '"their ordinary, contemporary, common meaning"' at the time of enactment. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). The R&R correctly recited these principles, but its application of them was incomplete in three respects.

First, the R&R defined only half of the operative phrase. It looked exclusively to the 1990 dictionary definition of the verb "call," "to get or try to get into communication by telephone," and concluded that a text message satisfies that definition. (*See* Dkt. 31 at 4). This reading ignores that Congress did not use the verb "call" by itself. Section 227(c)(5) instead uses the noun phrase "telephone call," in which "telephone" modifies and narrows "call." In 1991, a "telephone" was '"[a]n instrument for reproducing sounds at a distance[.]" *Steidinger v. Blackstone Med. Servs.*,

182 F.4th 532, 535-36 (7th Cir. 2026) (quoting Webster's Ninth New Collegiate Dictionary (1991)). As the Seventh Circuit explained, the phrase '"telephone call"' therefore "referred to communication via sound," and because "[t]ext messages do not reproduce sounds," they "do not qualify." *Id.* at 536; *see also Siringi v. Crust Pizza Co.*, 2026 U.S. Dist. LEXIS 258488, 2026 WL 3417126, at *3 (S.D. Tex. Oct. 14, 2026) *report and recommendation adopted in part, rejected in part*, No. 4:25-CV-04266, 2026 WL 3392348; *Siringi v. Crust Pizza Co.*, 2026 U.S. Dist. LEXIS 256579, 2026 WL 3392348 (S.D. Tex. Nov. 16, 2026). The Southern District of Florida rejected the same dictionary argument Plaintiff makes here for the same reason: it "only addresses the term 'call' as it existed at the time the TCPA was drafted, not the term 'telephone call,'" and "the inclusion of both words…renders Plaintiff's more generalized definition of 'call' overly broad." *Phillips v. GJD Stars Inc.*, 2026 U.S. Dist. LEXIS 233941, 2026 WL 3060556, at *7-8 (S.D. Fla. 2026) (internal citation omitted). Kits raised precisely this argument (*see* Dkt. 11 at 16-17; Dkt. 19 at 2-3), and, as another court has observed, decisions adopting Plaintiff's reading "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991." *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1371 (M.D. Fla. 2026). The R&R does not address this argument.

Second, the R&R's own authority undercuts its conclusion. The R&R acknowledges that, because the TCPA '"was drafted before the advent of text messaging,"' "Congress would not have understood 'telephone call' to refer to modern textual communication." (*See* Dkt. 31 at 4) (quoting *Taylor v. OffersPDQ, LLC*, 2026 U.S. Dist. LEXIS 232851, 2026 WL 2998370, at *2 (S.D. Tex. 2026)). Plaintiff concedes as much. (*See* Dkt. 13 at 18). "'[T]elephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year." *Steidinger*, 182 F.4th at 535; *see also Siringi*, 2026 U.S.

Dist. LEXIS 258488, at *7, 2026 WL 3417126, at *3. The R&R bridged this gap by invoking the principle that general statutory terms may embrace later technological innovations. (*See* Dkt. 31 at 4-5). That principle, however, applies only when the new technology does the same job as the thing the original term described. A text message is not a newer form of a telephone call; it is a different form of communication. Plaintiff's own authority illustrates the distinction. In *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987), the Seventh Circuit held that a statute protecting a farmer's "mower" covered a modern tractor-drawn machine because the new machine still cut hay. A telephone call, by contrast, connects the parties by voice; a text message delivers written words. (*See* Dkt. 11 at 16-17; Dkt. 19 at 3-4). The *Phillips* court drew the same line. It agreed that statutes are not '"confined to the particular applications contemplated by the legislators,"' but it found that the plaintiff was asking the court "to go further than simply applying the TCPA in a new scenario" and instead "to interpret the statute to conform with how Plaintiff believes Congress would have drafted the statute if they rewrote it today." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *8-9, 2026 WL 3060556, at *5 (internal citation omitted). Plaintiff asks this Court to do the same thing. The R&R does not engage this point.

Finally, the R&R's reading would extend the statute well beyond any ordinary understanding of a "telephone call." Under a definition that sweeps in any attempt "to get into communication by telephone," every communication transmitted through a modern cellular device—"not just SMS text messages but also app messages, emails, tweets, pings, push notification, posts, alerts, etc.—would presumably qualify as a '"telephone call."' *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *12, 2026 WL 3417126, at *5. In 1991, telegrams, facsimiles, and email all transmitted written content, yet no reasonable reader would have described any of them as a "telephone call." (*See* Dkt. 11 at 17). "The better reading is that 'telephone call' encompasses

phone communications produced via sound." *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *13, 2026 WL 3417126, at *5. The Northern District of Texas recently agreed, holding that "whether in 1991 or today, the ordinary public usage of the noun 'telephone call' is not synonymous with nor does it encompass 'text message.'" *Starling v. What If Holdings LLC*, No. 3:26-CV-1039-B, 2026 WL 3536298, at *4 (N.D. Tex. Nov. 16, 2026). As that court explained, "[a] person asking for a 'telephone call' will not expect to receive a written message, or text." *Id.*

### 2. The Statutory Structure Confirms That § 227(c)(5) Provides a Narrower Remedy Limited to Telephone Calls

The R&R next concluded that "the statutory context of the TCPA supports including text messages as actionable under § 227(c)(5)." (*See* Dkt. 31 at 5-6). It reached that conclusion by reasoning that "telephone call" should bear the same meaning in § 227(b) and § 227(c), and that Congress's use of "telephone call or message" in the definition of "telephone solicitation" in § 227(a)(4) shows a concern with purpose rather than form. (*Id.*). Both premises are flawed. The statutory structure points in the opposite direction. Congress defined "telephone solicitation" as "the initiation of a telephone call or message." 47 U.S.C. § 227(a)(4). It then used that broader term throughout § 227(c)(1) through (c)(4) when directing the FCC to regulate. But in § 227(c)(5), the only provision that creates a private remedy, Congress used neither "message" nor "telephone solicitation" and instead limited suit to a person who received "more than one telephone call." This language indicates that Congress "distinguished calls and messages as 'different forms of communication by telephone'" and '"provide[d] a narrower remedy"' for unwanted calls rather than for all unwanted telephone solicitations. *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *8-9, 2026 WL 3417126, at *4 (quoting *Steidinger*, 182 F.4th at 536) (internal quotation omitted). Where Congress '"used one term in one place, and a materially different term in another,"' courts presume it meant to '"denote[] a different idea."' *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458

(2022) (citation omitted). Reading "call" and "message" to mean the same thing would also render "message" surplusage in § 227(a)(4). *See United States v. Limon*, 159 F.4th 327, 336 (5th Cir. 2025). The district judge in *Siringi* agreed, finding "this difference in language significant" and concluding that "Section 227(c)(5) provided a narrower private remedy than the regulatory protections afforded to 'telephone solicitations.'" *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *3, . The *Phillips* court likewise found that Congress "conspicuously used the term 'telephone call' instead of 'telephone solicitation' or any other language that would be inclusive of written solicitations," a choice that "supports Defendant's side of the argument, not Plaintiff's." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *9. As that court explained, reviewing the neighboring provisions "only highlights the contrast between § 227(c)(5) and other provisions of the statute." *Id*. Again, the R&R does not address this point. (*See* Dkt. 11 at 14-15; Dkt. 19 at 5-6). Instead, it adopted the view that it is '"equally plausible"' that Congress intended the definition of '"telephone solicitation"' "to broaden § 227(c)(5)'s cause of action." (*See* Dkt. 31 at 6) (quoting *Callier v. Finish Line Inc.*, 2026 U.S. Dist. LEXIS 203594, 2026 WL 2654093, at *4 (N.D. Tex. Aug. 2026)). Respectfully, a finding that Plaintiff's reading is "equally plausible" is conjecture that ignores the indisputable fact that Congress *did not* amend the language of § 227(c)(5) to encompass text messages. The fact that Congress *could have* amended the language, or *might have* intended to amend the language, is immaterial – Congress did neither of these things. *Loper Bright* and *McLaughlin* require the Court to identify the best reading of the statute, and the words Congress actually used define the scope of a private right of action. Moreover, the purpose-based argument "cuts both ways": "[i]t is just as likely that Congress intentionally directed the FCC to regulate solicitations more broadly under subsections (c)(1) and (c)(2) while providing consumers 'a narrow remedy' that captures only 'unwanted calls' under subsection (c)(5)." *Siringi*, 2026 U.S.

Dist. LEXIS 258488, at *12 (quoting *Steidinger*, 182 F.4th at 536). Given the textual distinction Congress drew, the latter reading is the better one.

Nor does § 227(b) support the R&R's conclusion. The R&R relied on decisions holding that text messages qualify as "calls" under § 227(b). (*See* Dkt. 31 at 5). However, § 227(b)(1)(A)(iii) prohibits making "any call" using an autodialer or prerecorded voice; it does not use the narrower phrase "telephone call." (*See* Dkt. 19 at 8-9). Moreover, the § 227(b) authorities rested on Chevron-era deference or on the parties' agreement. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), "relied on *Chevron* deference," *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *6, and the Supreme Court has since clarified that its statement in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), was an assumption made '"without considering or resolving that issue."' *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021); *see also Siringi*, 2026 U.S. Dist. LEXIS 258488, at *11. The Fifth Circuit's observation that '"[r]obocalls and robotexts are nuisances"' likewise decided nothing, because "neither party contested whether 'calls' included texts." *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *11 (discussing *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021)). Indeed, *Phillips* found that the presence of text messages in § 227(b) cuts the other way: it shows that "Congress knew how to include text messages in the statute," which makes their absence from § 227(c)(5) "telling." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *8. Because the § 227(b) cases "addressed Section 227(b), rather than the differently worded private right of action in Section 227(c)(5)," they do not foreclose Kits' reading. *Siringi*, 2026 U.S. Dist. LEXIS 256579, at *3, 2026 WL 3392348 , at *2.

**3. Congressional Silence Does Not Reflect Approval of the FCC's Interpretation**

Nor can the R&R's conclusion be sustained on its finding that, "[b]ecause at the time of amendment Congress understood § 227(c)(5) as applying to text messages based on the FCC's

interpretation and the TCPA's definition of 'telephone solicitation,' it had no need to amend the § 227(c)(5) to explicitly reference text messages." (*See* Dkt. 31 at 6). That finding is, in substance, a theory of congressional acquiescence in an agency interpretation, and it cannot be reconciled with *Loper Bright*. (*See* Dkt. 19 at 6). "The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes." *Loper Bright Enters v. Raimondo*, 603 U.S. 369, 403 (2024). Where '"Congress has not comprehensively revised a statutory scheme but has made only isolated amendments … it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval."' *Siringi*, 2026 U.S. Dist. LEXIS 258488 at * 14 (quoting *Steidinger*, 182 F.4th at 539, and *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001)).

Indeed, the history of amendments to § 227 cuts against Plaintiff's arguments. When Congress amended § 227(e) in 2018, it expressly added and defined "text message" and "text messaging service" for purposes of that subsection. (*See* Dkt. 11 at 14); *see also* 47 U.S.C. § 227(e)(8)(A)-(C). Congress also left § 227(c)(5) untouched when it enacted the TRACED Act in December 2019. (*See* Dkt. 11 at 14). "[I]f Congress knew that the FCC extended protections to text messages and intended to adopt that interpretation silently by amending the TCPA without changes to § 227(c), it would not have added explicit references to text messages anywhere in the statute. Yet it did, clarifying which portions of § 227 covered text messages—and § 227(c)(5) was not one of them." *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *14, 2026 WL 3417126, at *6. *Phillips* reached the same conclusion, finding it "telling" that Congress "chose not to add the same language into § 227(c)(5) when amending the statute." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *8, 2026 WL 3060556, at 4. The district judge in *Siringi* similarly held that Congress's express reference in § 227(i)(1)(A) to '"a call made or a text message sent in violation of subsection (b)"

does not alter § 227(c)(5)'s requirement that a plaintiff have received more than one "telephone call." *Siringi*, 2026 WL 3392348, at *2. The R&R did not address the TRACED Act or Kits' argument that congressional inaction is not an endorsement. (*See* Dkt. 11 at 14; Dkt. 19 at 5-6). For each of these reasons, the Court should sustain Objection 1.

### B. OBJECTION 2 - THE R&R ERRED IN RELYING ON FCC GUIDANCE AND ON UNREASONED AUTHORITY IN PLACE OF AN INDEPENDENT CONSTRUCTION OF § 227(c)(5)

Kits further objects to the R&R's reliance on FCC guidance and on the purported weight of authority within this Circuit to support its construction of § 227(c)(5). (*See* Dkt. 31 at 3-7). Neither substitutes for the independent statutory analysis that *Loper Bright* and *McLaughlin* require.

#### 1. FCC Guidance Cannot Define the Scope of the Private Right of Action

The R&R found that "[i]nterpreting § 227(c) to include text messages also is consistent with FCC guidance." (*See* Dkt. 31 at 6). District courts "are not bound by the FCC's interpretation" and must instead interpret the statute "under ordinary principles of statutory interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). The R&R erred in three respects.

First, the R&R did not address Kits' showing that the FCC's 2003 order on which Plaintiff relies addressed only § 227(b) and its implementing regulation, 47 C.F.R. § 64.1200(a), and therefore "does not even address the specific provisions of the TCPA and its regulations at issue in this case." *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 900 (C.D. Ill. 2025); (*see* Dkt. 11 at 8; Dkt. 19 at 4-5). Second, although the R&R stated that FCC guidance is owed "appropriate respect," it did not explain what weight the cited 2018 FCC ruling deserves or why. (*See* Dkt. 31 at 6). Third, and most fundamentally, the R&R did not engage Kits' distinction between the FCC's authority to regulate text-message solicitations and the scope of the private

right of action Congress enacted. (*See* Dkt. 19 at 6-7). The FCC implemented the National Do-Not-Call Registry "pursuant to § 227(c)(3), which refers to 'telephone solicitations,'" and that regulatory choice does not inform the meaning of § 227(c)(5), "which refers only to telephone calls." *Siringi*, 2026 U.S. Dist. LEXIS 258488 at *13 (quoting *Steidinger*, 182 F.4th at 538). As the district judge held in *Siringi*, "the FCC's regulation of text-message solicitation [does not] resolve the scope of the distinct federal private remedy." *Siringi*, 2026 U.S. Dist. LEXIS 256579 at *4, 2026 WL 3392348 , at *2. *Phillips* likewise held that, after *Loper Bright*, the FCC's position "must take a back seat to the clear text of the statute." *Phillips*, 2026 U.S. Dist. LEXIS 233941 at *5-6, 2026 WL 3060556, at *1.

The R&R's reliance on 47 C.F.R. § 64.1200(e) is misplaced for the same reason. (*See* Dkt. 31 at 7). The R&R itself recognized that "[r]egulations cannot create private rights of action; they must be created by statute." (*Id.*) (citing *Stewart v. Bernstein*, 769 F.2d 1088, 1092 (5th Cir. 1985)). It follows that a regulation extending the FCC's rules to text messages cannot enlarge the class of persons Congress authorized to sue. The question before this Court is not whether the FCC may regulate text-message solicitation; it is "whether Congress created a private cause of action for them in § 227(c)(5)." (*See* Dkt. 19 at 6). Congress did not.

**2. The Authorities on Which the R&R Relied Do Not Withstand Scrutiny**

The R&R also relied on the purported weight of authority within this Circuit. (*See* Dkt. 31 at 3-4). The lead authority it cited was a default-judgment recommendation entered without adversarial briefing, which stated only that the court was persuaded by "the overwhelming majority of cases." *Callier v. Am. Auto Grp. LLC*, 2026 U.S. Dist. LEXIS 120642, 2026 WL 1741206, at *8 (W.D. Tex. May 2026); (*see also* Dkt. 19 at 7-8). Similarly, *Duron v. Kings Capital Holding LLC*, 2026 U.S. Dist. LEXIS 6340, 2026 WL 319779, at *6 (W.D. Tex. Jan. 2026), was a default-judgment recommendation that relied on "the weight of authority" rather than an

independent construction of § 227(c)(5). (*See* Dkt. 11 at 17-18; *see also* Dkt. 19 at 9). *Callier*, moreover, held that identical "telephone call" language in Texas Business and Commerce Code § 302.001(7) did not reach text messages, a holding Plaintiff effectively conceded when he abandoned Count IV. (*See* Dkt. 19 at 8; Dkt. 13 at 4). The R&R did not address either point.

Further, the R&R declined to follow *Steidinger*—the only decision of a federal court of appeals that independently construed § 227(c)(5) after *McLaughlin*—solely by reference to another district court decision within this Circuit that declined to follow it. (*See* Dkt. 31 at 4-5) (citing *Feliciano v. Red McCombs Hyundai Nw., LLC*, 2026 U.S. Dist. LEXIS 246635, 2026 WL 3232870, at *2 (W.D. Tex. Oct. 28, 2026)). A count of district court decisions "is no substitute" for the textual analysis that *Loper Bright* and *McLaughlin* require. (*See* Dkt. 19 at 8). Other courts have recognized that *Steidinger* is the only circuit decision to have "squarely addressed the issue of whether text messages are telephone calls under § 227(c)(5)," and that it "came down on the issue in favor of defendants." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *2 n.2, 2026 WL 3060556, at *1.

*Phillips* is significant for a further reason: it shows what happens when a court sets aside prior FCC guidance and the "weight of authority" and actually analyzes the statute. The *Phillips* court confronted the same body of pre-*Loper Bright* authority on which the R&R relies. It acknowledged that the Eleventh Circuit "has historically followed the FCC rule, in accordance with the deference that Article III courts were required to afford agency rulemaking under *Chevron*," and that the Southern District of Florida itself had previously construed "'phone calls' as inclusive of text messages per the FCC regulation." *Phillips*, 2026 U.S. Dist. LEXIS 233941, at *5-6 & n.3, 2026 WL 3060556, at *3 (citing *Glasel v. Office Depot, LLC*, 2025 WL 4947735 (S.D. Fla. Nov. 25, 2025), and *Piet v. Office Depot, LLC*, 2025 WL 4676030 (S.D. Fla. Nov. 25, 2025)).

Rather than follow those decisions or the FCC's interpretation, the court recognized that, "now that '*Chevron* is overruled[,] [c]ourts must exercise their independent judgment."' *Id.* at *5-6 (quoting *Loper Bright*, 603 U.S. at 412). It then did exactly that. It began with the text; gave effect to both words in "telephone call"; contrasted § 227(c)(5) with the neighboring provisions that use "telephone solicitation" or expressly reference text messages; considered the amendment history; and declined the plaintiff's invitation "to guess what Congress would do if it wrote the statute today." *Id.* at *6-9. Having conducted that analysis, the court concluded that "the statutory text is clear" and that text messages fall outside § 227(c)(5). *Id.* at *9. Critically, *Phillips* was decided after the Seventh Circuit issued *Steidinger*, which the court identified as the only circuit decision to squarely address the question. *Id.* at *2 n.2. In other words, after *Steidinger*, the very District that had previously held text messages to be actionable "calls" under the FCC's interpretation reversed course once it undertook the independent statutory analysis that *Loper Bright* and *McLaughlin* require.

The Southern District of Texas recently did the same thing. Earlier decisions from that District, including *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026), treated text messages as actionable under § 227(c)(5), and the R&R relied on both. (*See* Dkt. 31 at 4-5). In *Siringi*, however, the district judge, on *de novo* review, found "*Steidinger's* treatment of the statutory text and structure more persuasive" than the contrary analysis in *Alvarez* and held that text messages are not actionable under § 227(c)(5). *Siringi*, 2026 U.S. Dist. LEXIS 258488, at *3, 2026 WL 3392348 , at *2. Like *Phillips*, *Siringi* did not rest on FCC guidance or a tally of prior decisions; it construed the statutory text, structure, and amendment history itself. *See id.* at *3-4, *8-14.

The Northern District of Texas has now followed the same path. The R&R relied on *Callier v. Finish Line Inc.*, a Northern District of Texas decision finding it "equally plausible" that § 227(c)(5) reaches text messages. (*See* Dkt. 31 at 6). Ten days after the R&R issued, however, the Northern District of Texas in *Starling* held that "the best reading of § [227](c) is that plaintiffs may sue for unwanted telephone calls, but not unwanted text messages," and dismissed § 227(c)(5) and 47 C.F.R. § 64.1601(e)(1) claims that, like Plaintiff's, rested solely on the receipt of text messages. *Starling*, 2026 WL 3536298, at *5.

The *Starling* court rejected the FCC's interpretation as non-binding after *Loper Bright* (*id.* at *6) and expressly declined to follow *Duron* and *Alvarez*—the same authorities on which the R&R relied—because they rested on '"consisten[cy] with numerous district court decisions"' and FCC regulations rather than "textual or statutory analysis of § 227(c)." *Id.* at *7. Instead, the court conducted its own analysis of ordinary meaning, statutory context, and amendment history, and concluded that "text messages are not telephone calls under the TCPA." *Id.* at *8. In its ruling, the court also noted that it "is by no means alone in the opinion it holds today" and collected cases from across the country holdings text messages are not telephone calls. *Id.* *7, n. 8. The court went so far as to hold that any amendment seeking to state a § 227(c)(5) claim based on text messages "would be futile." *Id.* at n. 10.

Within this Circuit, therefore, the asserted consensus does not exist. *Phillips*, *Siringi*, and *Starling* demonstrate that when courts set aside pre-*Loper Bright* deference and the purported weight of authority and engage the statute directly, they conclude that a text message is not a "telephone call." The R&R did not undertake that analysis. The Court should give *Steidinger*, *Siringi*, *Phillips*, and *Starling* the weight their reasoning warrants and sustain Objection 2.

### C. OBJECTION 3 - THE R&R ERRED IN FINDING A PRIVATE RIGHT OF ACTION TO ENFORCE THE CALLER-IDENTIFICATION RULE

Counts I, II, and III all fail for the reasons set out in Objections 1 and 2, because each depends on § 227(c)(5) and each rests on the same alleged text messages. (*See* Dkt. 1 ¶¶ 54-71). Count II, however, fails for an additional and independent reason. Kits therefore also objects to the R&R's conclusion that a private right of action exists to enforce 47 C.F.R. § 64.1601(e). (*See* Dkt. 31 at 7-8).

The R&R relied on decisions holding that the FCC promulgated § 64.1601(e) under § 227(c). (*See* Dkt. 31 at 7-8). But courts remain divided on whether the caller-identification rule was prescribed under § 227(c) or instead operates as a technical rule outside § 227(c)(5)'s cause of action, and the better-reasoned decisions have concluded that no private right of action exists. (*See* Dkt. 11 at 18; Dkt. 19 at 10) (citing *Meyer v. Cap. All Grp.*, 2017 U.S. Dist. WL 518316, at *17 (S.D. Cal. Nov. 2017); *Griffin v. Am. Amicable Life Ins. Co. of Tex.*, 2024 U.S. Dist. LEXIS , 2024 WL 4333373, at *5 (D. Or. Sept. 2024)). The R&R did not address *Meyer* or *Griffin*. The Court should dismiss Count II on this ground even if it overrules Objections 1 and 2.

Moreover, even accepting the R&R's conclusion that § 64.1601(e) was promulgated under § 227(c), a plaintiff may sue under § 227(c)(5) only if he "has received more than one telephone call" in violation of those regulations. Kits expressly argued that Count II fails for this reason as well, but the R&R did not address the argument. (*See* Dkt. 19 at 10). The *Phillips* plaintiff asserted his claim under both § 227(c)(5) and 47 C.F.R. § 64.1601(e)(1), and the court entered judgment against him in full because his claim "rests entirely on the receipt of text messages." *Phillips*, 2026 U.S. Dist. LEXIS 233941 at *9, 2026 WL 3060556, at *5. Because Plaintiff alleges only text messages, Count II falls with Counts I and III.

### D. ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Should the Court adopt the R&R's recommendation as to Counts I through III, Kits respectfully requests that the Court state in its order that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Whether text messages are "telephone calls" under § 227(c)(5) is a pure question of law that controls every remaining claim. There is substantial ground for difference of opinion: the Seventh Circuit and the Ninth Circuit have reached conflicting conclusions. *Compare Steidinger*, 182 F.4th 532, *with Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026). District courts within this Circuit are also divided. *Compare Siringi*, 2026 U.S. Dist. LEXIS 258488, 2026 WL 3392348 *and Starling*, 2026 WL 3536298 with *Alvarez*, 2026 WL 202930. The Fifth Circuit "has not yet addressed" the question. (*See* Dkt. 31 at 3). And an immediate appeal would materially advance the termination of this putative nationwide class action, because a reversal would dispose of the case in its entirety before the parties and the Court undertake class discovery and certification proceedings.

## CONCLUSION

For the foregoing reasons, Kits respectfully requests that the Court sustain its Objections, decline to adopt the R&R's recommendations that the Motion be denied as to Counts I, II, and III, and dismiss Plaintiff's TCPA claims *with prejudice*. In the alternative, Kits requests that the Court certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

Date: November 20, 2026.

Respectfully submitted,

By: */s/ Michael Stockham*

Michael Stockham (TX Bar No. 24038074)
michael.stockham@hklaw.com
**HOLLAND & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel: 214.969.2515
Fax: 214.964.9501

Christopher R. Murphy (*Pro Hac Vice*)
chris.murphy@hklaw.com
**HOLLAND & KNIGHT LLP**
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Tel: 312.715.5722
Fax: 312.578.6666

Jonathan M. Marmo (*Pro Hac Vice)*
jonathan.marmo@hklaw.com
**HOLLAND & KNIGHT LLP**
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Phone: (215) 252-9600

***Counsel for Defendant Kits Eyecare, Ltd d/b/a OptiContacts***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Objections was electronically filed via the CM/ECF system on November 20, 2026, which will provide a copy to Plaintiff and all counsel of record.

*/s/ Michael Stockham*
Michael Stockham